625 So.2d 821 (1993)
STATE of Florida, Petitioner,
v.
Johnny JONES, Respondent.
No. 80,069.
Supreme Court of Florida.
August 26, 1993.
Rehearing Denied November 9, 1993.
Robert A. Butterworth, Atty. Gen., and Nancy Ryan, Daytona Beach, and Gypsy Bailey, Tallahassee, Asst. Attys. Gen., for petitioner.
James B. Gibson, Public Defender; James R. Wulchak, Chief, Appellate Div., and Anne Moorman Reeves, Asst. Public Defenders, Seventh Judicial Circuit, Daytona Beach, for respondent.
BARKETT, Chief Justice.
We have for review Jones v. State, 600 So.2d 1138 (Fla. 5th DCA 1992), in which the district court certified conflict with Flanagan v. State, 586 So.2d 1085 (Fla. 1st DCA 1991).[1] For the reasons expressed below, we quash Jones.
Johnny Jones was charged with two counts of sexual battery on a child less than twelve years old. After a jury trial, he was found guilty and sentenced to concurrent life sentences. The child testified at trial that Jones had intercourse with her twice in the spring of 1987 when she was eight years old. Jones was the child's mother's boyfriend at the time of the alleged offenses; he was the child's stepfather at the time of the trial. The child also testified that a different man committed a similar act with her in December 1986, and a doctor testified that he treated her for gonorrhea after that incident.
*822 Dr. Matthew Seibel, a pediatrician in private practice who also is medical director of the Orange County Child Protection Team, examined the child on June 17, 1987. He determined that the child had gonorrhea and asked her if anyone had "messed with" her.[2] She responded that Johnny Jones had done so. Dr. Seibel's testimony as to her answer was admitted into evidence over a hearsay objection based on the State's argument that the child's statement was made in connection with a physician's treatment. § 90.803(4), Fla. Stat. (1985).
Another member of the child protection team, Dr. Lynda Pollack, conducted a follow-up examination of the child on July 1, 1987. Dr. Pollack found the girl's hymenal ring to be slightly enlarged and torn in three places. Dr. Pollack testified over a hearsay objection that her notes reflected that the child told her during the examination that Johnny Jones had intercourse with her.[3]
The child's mother testified that Jones did not have gonorrhea during the time they lived together in 1986 and 1987. A physical examination of Jones, unrelated to this case and conducted on June 7, 1987, showed no indication of gonorrhea, although the test was not designed to identify the disease.
The defense attempted to show that the child had been sexually abused by her natural father six years before the acts charged in this case; the evidence was proffered to show that the child protection team doctors' 1987 findings could have been the result of the 1981 abuse. The evidence was excluded.
The Fifth District Court of Appeal reversed Jones' convictions and remanded for a new trial. The court found that the doctors' testimony was not admissible under the medical diagnosis or treatment exception to the rule against hearsay because the physicians were providing services for the child protection team. Although noting that treatment would follow naturally from the examination, the court found that "the true and only initial purpose of the examination was to determine whether sexual abuse had occurred and, if so, the identity of the individual responsible for it." Id.[4] The court certified conflict with Flanagan.[5]
The issues presented are whether statements to medical personnel by victims of child sexual abuse are admissible under section 90.803(4), the Florida Evidence Code's medical diagnosis and treatment exception to the rule against hearsay,[6] and whether statements to physicians working for child protection teams should be treated differently from statements to other physicians because of any investigatory role played by the teams. See generally §§ 415.502, .503, .5055, Fla. *823 Stat. (1985) (relating to role of child protection teams). Because of our resolution of the first issue, it is unnecessary to address the second.
It is undoubtedly difficult to balance the rights of the accused against the obvious desirability of admitting into evidence reliable out-of-court statements of child victims of abuse. Unfortunately, not every statement by a child that he or she has been abused is reliable, and the Florida Legislature has recognized the vital interests that must be balanced in child abuse prosecutions. In 1985, the Legislature enacted section 90.803(23), a special hearsay exception that was adopted in an effort to comprehensively address the issues relating to a child's out-of-court statements of abuse. The statute provides:
(a) Unless the source of information or the method or circumstances by which the statement is reported indicates a lack of trustworthiness, an out-of-court statement made by a child victim with a physical, mental, emotional, or developmental age of 11 or less describing any act of child abuse, sexual abuse, or any other offense involving an unlawful sexual act, contact, intrusion, or penetration performed in the presence of, with, by, or on the declarant child, not otherwise admissible, is admissible in evidence in any civil or criminal proceeding if:
1. The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. In making its determination, the court may consider the mental and physical age and maturity of the child, the nature and duration of the abuse or offense, the relationship of the child to the offender, the reliability of the assertion, the reliability of the child victim, and any other factor deemed appropriate; and
2. The child either:
a. Testifies; or
b. Is unavailable as a witness, provided that there is other corroborative evidence of the abuse or offense. Unavailability shall include a finding by the court that the child's participation in the trial or proceeding would result in a substantial likelihood of severe emotional or mental harm, in addition to findings pursuant to s. 90.804(1).
(b) In a criminal action, the defendant shall be notified no later than 10 days before trial that a statement which qualifies as a hearsay exception pursuant to this subsection will be offered as evidence at trial. The notice shall include a written statement of the content of the child's statement, the time at which the statement was made, the circumstances surrounding the statement which indicate its reliability, and such other particulars as necessary to provide full disclosure of the statement.
(c) The court shall make specific findings of fact, on the record, as to the basis for its ruling under this subsection.
§ 90.803(23), Fla. Stat. (1985).
The legislative history of this section delineates the premise upon which it is based:
As a part of a legislative package dealing with the involvement of children in judicial proceedings, the 1985 session of the Florida legislature attempted to balance the need for reliable out-of-court statements of child abuse victims against rights of the accused, and enacted an exception that will apply only if the enumerated foundation requirements have been shown to exist.
Charles W. Ehrhardt, Florida Evidence § 803.23, at 686-87 (1993 ed.) (emphasis supplied); see also ch. 85-53, Whereas Clauses, at 140, Laws of Fla. ("WHEREAS, the rights of the defendant in a criminal prosecution must be balanced with the right of a child victim to be protected... .").
The medical diagnosis or treatment hearsay exception, on the other hand, is premised on the assumption that a person seeking medical help has a strong motivation to be truthful because of the desire for effective treatment. Ehrhardt, Florida Evidence § 803.4. In addition to statements about symptoms, statements describing the inception or cause of an illness or injury are admissible under the exception if they are reasonably pertinent to diagnosis or treatment. Torres-Arboledo v. State, 524 So.2d 403, 407 (Fla.), cert. denied, 488 U.S. 901, 109 *824 S.Ct. 250, 102 L.Ed.2d 239 (1988). However, statements of fault are not admissible. Id. (statement by man that he was shot was admissible because it was reasonably pertinent to diagnosis or treatment, but statement that black people tried to steal his medallion was not admissible because it was not reasonably pertinent to medical treatment); see also Conley v. State, 620 So.2d 180 (Fla. 1993) (alleged victim's statements as to how she had been sexually assaulted were reasonably pertinent to diagnosis or treatment, but statement that she was assaulted at gunpoint was inadmissible because it was not reasonably pertinent to medical treatment).
The Florida district courts of appeal in dealing with cases involving child victims of sexual abuse generally have followed the rule that statements to medical personnel identifying the perpetrator are not pertinent to diagnosis or treatment. See State v. Ochoa, 576 So.2d 854, 855 n. 2 (Fla. 3d DCA 1991); Hanson v. State, 508 So.2d 780 (Fla. 4th DCA 1987). In Flanagan, however, the First District Court of Appeal relied on a line of federal cases construing a similar medical diagnosis or treatment exception in the Federal Rules of Evidence[7] to find that statements of identity by child victims of sexual abuse to medical personnel can be reasonably pertinent to diagnosis or treatment, particularly when the perpetrator is a member of the victim's family. Flanagan, 586 So.2d at 1092-99.
The leading case in this area is United States v. Renville, 779 F.2d 430 (8th Cir.1985), in which the court permitted a physician to testify regarding statements of an eleven-year-old child identifying her stepfather as her assailant. The court noted that the crucial question was whether the child's statements were "reasonably pertinent" to diagnosis or treatment: "[F]irst, the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and second, the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis." Id. at 436 (relying on test articulated in United States v. Iron Shell, 633 F.2d 77 (8th Cir.1980), cert. denied, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981)). The court acknowledged that statements of fault or identity generally do not meet the requirements of the two-part test because such statements are not made to promote effective treatment, and physicians rarely have reason to rely on statements of identity in making decisions regarding diagnosis or treatment. Renville, 779 F.2d at 436.
In cases involving statements by child victims of abuse, however, the court reasoned that the general rules should not apply:
We believe that a statement by a child abuse victim that the abuser is a member of the victim's immediate household presents a sufficiently different case from that envisaged by the drafters of rule 803(4) that it should not fall under the general rule. Statements by a child abuse victim to a physician during an examination that the abuser is a member of the victim's immediate household are reasonably pertinent to treatment.
Id. The court went on to state that to satisfy the test for admissibility, the physician must make clear to the victim that the inquiry into the identity of the abuser is important to diagnosis and treatment, and the victim must manifest such an understanding. Id. at 438. In such situations, the victim's motive to speak truthfully is the same as when someone makes statements regarding symptoms or chronology of events, the court reasoned. Id.
The majority of state courts confronted with this issue have followed Renville and permitted medical personnel to testify regarding statements of identity made by child victims of abuse. See, e.g., Stallnacker v. State, 19 Ark. App. 9, 715 S.W.2d 883, 885 *825 (1986); Edwards v. Commonwealth, 833 S.W.2d 842 (Ky. 1992); State v. Aguallo, 318 N.C. 590, 350 S.E.2d 76 (1986).
However, the trend to adopt a Renville-type analysis also has been harshly criticized. As the Maryland Court of Special Appeals noted in a scholarly opinion:
In stretching outward their list of a physician's responsibilities and in pushing forward with their definition of "medical treatment and diagnosis," the expansionists have left behind, abandoned and forgotten, the state of mind of the declarant... . Physical self-survival dictates revealing even embarrassing truth to avoid the risk of the wrong medicine or the needless operation. Presupposing a declarant conscious of the probable consequences of his assertions, the imperative to speak truthfully is not nearly so strong when the anticipated result is a social disposition. The temptation to influence the result may, indeed, run in quite the opposite direction. Truthful answers as to the identity of its abuser may well wrench a child from the reassuring presence of its mother or father or both. It is highly unlikely that there operates in an infant declarant a compelling desire to bring about such a result.
Cassidy v. State, 74 Md. App. 1, 536 A.2d 666, 684 (1988), cert. denied, 312 Md. 602, 541 A.2d 965 (1988).
Moreover, many commentators have expressed concern that in the course of laudable efforts to combat child abuse, prosecutors, courts, and others have occasionally overreached. See, e.g., Michael H. Graham, The Confrontation Clause, the Hearsay Rule, and Child Sexual Abuse Prosecutions: The State of the Relationship, 72 Minn. L.Rev. 523, 529 n. 26 (1988) ("The successful prosecution of child sexual abuse cases should not be permitted to distort the hearsay exception for statements for medical diagnosis or treatment. Almost anything is relevant to the diagnosis or treatment of psychological well being, and far too many untrustworthy statements are relevant to preventing repetition of the abuse."); Robert P. Mosteller, Child Sexual Abuse and Statements for the Purpose of Medical Diagnosis or Treatment, 67 N.C.L.Rev. 257, 258 (1989) (Applications of medical diagnosis or treatment exception in child abuse cases "have tended to expose the thinness of the justification for extending the exception to statements made without any view toward treatment."); John Dorschner, A Question of Innocence, Miami Herald, July 28, 1985 (Tropic Magazine); Anna Quindlen, Unfairness of Child Abuse Trials is a Given, Miami Herald, Apr. 2, 1993, at 25A:
On the one hand, will social workers elicit fantasies from children who, faced with the anatomically correct dolls and the talk of "bad" things, figure out what the grownups want?
On the other, will anything much short of leading questions elicit the truth if abused children are ashamed or afraid of their assailants?
... .
[F]rom the moment a child says something disquieting to a parent, all involved  parents, investigators, psychologists, lawyers, judges  need to proceed with an unusual degree of sophistication and caution.
Clearly, section 90.803(23) is the Florida Legislature's response to the need to establish special protections for child victims in the judicial system. The legislative history of section 90.803(23) shows that initial drafts of the bills in both houses included not only a new hearsay exception, but also expansions of the medical diagnosis and treatment exception and the excited utterance hearsay exception in ways that would accommodate statements of child victims of abuse. The proposed expansions of the existing hearsay exceptions were removed after discussion,[8] and lawmakers chose instead the more balanced new hearsay exception codified in section *826 90.803(23). Compare Staff of Fla. H.R.Comm. on Judiciary, HB 874 (1985) Staff Analysis 1-2 (May 4, 1985) with Staff of Fla.H.R.Comm. on Judiciary, CS/HB 874 (1985) Staff Analysis 1-2 (rev. May 11, 1985); compare Staff of Fla.S.Comm. on Judiciary-Civ., SB 290 (1985) Staff Analysis 1-3 (April 2, 1985) with Staff of Fla.S.Comm. on Judiciary-Civ., CS/SB 290 Staff Analysis 1-3 (May 1, 1985); see also Fla.S.Comm. on Judiciary-Civ., tape recording of proceedings (May 1, 1985) (Florida State Archives) (comments of Florida State University Law Professor Charles Ehrhardt).[9]
By providing for such safeguards as a hearing out of the jury's presence in order to assure reliability of the statements and special notice of the intent to use the statements, the Legislature sought to strike a balance between the need to consider child hearsay statements in judicial proceedings and the rights of the accused.[10] This Court has adopted the procedural aspects of section 90.803(23) as rules of court, In re Amendment of Florida Evidence Code, 497 So.2d 239 (Fla. 1986), and determined that the section comports with the confrontation clauses of both the federal Constitution and the Florida Constitution. Perez v. State, 536 So.2d 206, 209 (Fla. 1988), cert. denied, 492 U.S. 923, 109 S.Ct. 3253, 106 L.Ed.2d 599 (1989); Glendening v. State, 536 So.2d 212, 214 (Fla. 1988), cert. denied, 492 U.S. 907, 109 S.Ct. 3219, 106 L.Ed.2d 569 (1989).
With section 90.803(23) in place in Florida and frequently applied in the courts,[11] and in light of the legislative history rejecting the expansion of the medical diagnosis and treatment exception, we reject the adoption of Renville into Florida law and instead find that statements such as those at issue here are controlled by section 90.803(23).[12]
However, the State's failure to introduce the physicians' statements through section 90.803(23) is not fatal to the State in this case because the statements in question were admissible as prior consistent statements by the child to rebut charges of recent fabrication and improper influence. Section 90.801(2)(b), Fla. Stat. (1985).[13]
On cross-examination, the child admitted discussing her testimony with the prosecutor shortly before the trial. Through questioning, the defense counsel implied that the prosecutor had told her what to say on the stand. The defense counsel also asked if she had been told to accuse Jones in order to protect her uncle. The physicians' later testimony, which was consistent with that of the *827 child at trial, satisfies the definition of nonhearsay in section 90.801(2)(b), and under the circumstances and facts of this particular case, it was properly admitted by the trial judge. See Nussdorf v. State, 508 So.2d 1273 (Fla. 4th DCA 1987).
For the foregoing reasons, the district court's decision is quashed and the case is remanded for proceedings consistent with this opinion.
It is so ordered.
OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution.
[2] Dr. Seibel's examination consisted of taking the child's medical history and conducting a physical examination. Nothing in the record indicates that he inquired about her psychological health or attempted to counsel her in any way. His treatment was limited to prescribing drugs for gonorrhea.
[3] Dr. Pollack testified that her examination was limited to the child's genitalia. Nothing in the record indicates that the doctor inquired about the child's psychological health or made any attempt to counsel her.
[4] The appellate court also held that it was error to exclude the proffered evidence of sexual abuse six years earlier. Jones v. State, 600 So.2d 1138, 1140 (Fla. 5th DCA 1992). The court noted that the error in not admitting the evidence of earlier abuse may have been harmless because of testimony that the child's injuries were recent. In light of this evidence, as well as the testimony from a doctor who examined the child the previous year and found that her hymenal ring was not torn and was of normal size, we find that if the exclusion was erroneous, it was harmless.
[5] The district court expressed no opinion on whether the challenged hearsay would be admissible pursuant to section 90.803(23), Florida Statutes (1985), which relates to out-of-court statements by child victims of abuse. That section was not addressed because the required pretrial notice and hearing did not take place. Jones, 600 So.2d at 1140 n. 1.
[6] Section 90.803(4) states that the following are excepted from the hearsay rule:

Statements made for purposes of medical diagnosis or treatment by a person seeking the diagnosis or treatment, or made by an individual who has knowledge of the facts and is legally responsible for the person who is unable to communicate the facts, which statements describe medical history, past or present symptoms, pain, or sensations, or the inceptions or general character of the cause or external source thereof, insofar as reasonably pertinent to diagnosis or treatment.
[7] Section 803(4) of the Federal Rules of Evidence provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
... .
(4) Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.
[8] Professor Charles W. Ehrhardt of the Florida State University College of Law told the committee that the proposed expansions of the existing hearsay exceptions "have substantial problems of reliability." Ehrhardt went on to state: "If you're going to provide for an exception for these statements, you should do it on a basis where the court has to find they're reliable." Fla.S.Comm. on Judiciary-Civ., tape recording of proceedings (Apr. 3, 1985) (Florida State Archives) (comments of Professor Ehrhardt).
[9] Professor Ehrhardt's comments included the following statement regarding the new hearsay exception, which was ultimately adopted as section 90.803(23):

I think that this hearsay exception is much better than the way the bill was originally drafted. And when I was here before to talk with you, I had some serious questions about the hearsay provisions of that bill. If y'all decide a hearsay exception is desirable in this situation, I think that this is about as tight a hearsay exception  the way it's drafted  as you can have. It ensures reliability and so forth.
[10] Within the last decade, numerous other states have adopted similar special hearsay exceptions. Cassidy v. State, 74 Md. App. 1, 536 A.2d 666, 681 (1988) (noting that only two states had so-called "tender years" hearsay exceptions in 1982 and that the number had grown to 18 by 1985 and to 27 by 1988), cert. denied, 312 Md. 602, 541 A.2d 965 (1988); see also Michael H. Graham, The Confrontation Clause, the Hearsay Rule, and Child Sexual Abuse Prosecutions: The State of the Relationship, 72 Minn.L.Rev. 523, 534-37 (1988) (discussing special statutory hearsay exceptions).
[11] See 6C Fla. Stat. Ann. 89-95 (Supp. 1993) (listing numerous appellate cases interpreting section 90.803(23)).
[12] We note that the doctors' statements in this case would not satisfy the test established in United States v. Renville, 779 F.2d 430 (8th Cir.1985), for admission under the medical diagnosis and treatment exception. Renville requires that the physician make clear to the child that the inquiry into the identity of the abuser is important to diagnosis and treatment, and the child must manifest such an understanding. Id. at 438. That did not occur here.
[13] The statute provides:

A statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is:
... .
(b) Consistent with his testimony and is offered to rebut an express or implied charge against him of improper influence, motive, or recent fabrication. .. .
§ 90.801(2)(b), Fla. Stat. (1985).