ANSTEAD, Justice.
We have for review M.B. v. Department of Health & Rehabilitative Services, 21 Fla. L. Weekly D1817, 1996 WL 453438 (Fla. 1st DCA Aug.13, 1996). We accepted jurisdiction to answer the following questions certified to be of great public importance:
DOES THE TERM “STATEMENT” IN SECTION 90.803(23), FLORIDA STATUTES, PERMIT THE ADMISSION OF A CHILD VICTIM’S PRIOR UNSWORN STATEMENT WHICH IS INCONSISTENT WITH THE CHILD’S IN-COURT TESTIMONY, IF THE EVIDENCE SUPPORTS A DETERMINATION THAT THE EARLIER UNSWORN STATEMENT MEETS SUFFICIENT SAFEGUARDS OF RELIABILITY?
IF SECTION 90.803(23) PERMITS A CHILD VICTIM’S PRIOR INCONSISTENT STATEMENTS TO BE ADMITTED AS SUBSTANTIVE EVIDENCE, IF FOUND TO BE TRUSTWORTHY AND THE RECORD SUPPORTS SUCH A FINDING, IS THE COMBINATION OF SUCH STATEMENTS AND THE CORROBORATING MEDICAL EVIDENCE, INDICATING ONLY THE POSSIBILITY THAT ABUSE MAY HAVE OCCURRED, SUFFICIENT TO ESTABLISH THE DEPENDENCY OF THE CHILD UNDER THE PREPONDERANCE OF THE EVIDENCE OR THE GREATER WEIGHT OF THE. EVIDENCE STANDARD?
21 Fla. L. Weekly at D1818, 1996 WL 453438. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. .For the reasons expressed below, we answer both certified questions in the affirmative and quash the decision under review. We commend both the majority and the dissent in the district court for their thorough examination of the issues before us.
TRIAL COURT PROCEEDINGS
On February 16, 1993, eight-year-old D.W. told her third grade teacher that her stepfather had sexual intercourse with her during the previous month. D.W. also reported that her stepfather forced her to perform fellatio on one occasion when she was between four and six years of age. D.W. later repeated this information to a guidance counselor, a Child Protection Team (CPT) coordinator, a CPT nurse practitioner, and a clinical psychologist on referral from CPT. Medical examinations yielded physical findings consistent with the history detailed by D.W.
Detention petitions for D.W. and her four siblings were subsequently filed by the Department of Health and Rehabilitative Services (HRS)[1] based on D.W.’s assertions. D.W.’s mother, G.B., acknowledged to investigating officials that her daughter had been molested, but she refused to believe her husband was the perpetrator. She also noted that several of her husband’s friends had been visiting the family’s home the night the sexual abuse occurred.
After the delinquency petition was filed, D.W. told investigators that she no longer could remember who abused her. A psychologist who examined her attributed this inconsistency to “child sexual abuse accommodation syndrome.”[2] Under that theory, a child sexual abuse victim, whose story is distrusted by the non-offending parent — D.W.’s mother in this case — eventually retracts the accusation in order to restore the family system to its pre-accusation status.
At the trial on the dependency petition, D.W. testified that “someone” had sexually abused her, although she was unable to identify that person. Medical evidence, including physical findings of abuse, was also admitted. The trial court also admitted hearsay testimony of several witnesses regarding D.W.’s *1157 initial statements about her sexual abuse and identifying her stepfather as the abuser. In admitting the child’s out-of-court statements, and as required by section 90.803(23), Florida Statutes (1995), providing for a child victim hearsay exception, the trial court entered a detailed order with specific findings as to the reliability of the statements.
At the conclusion of the dependency hearing the trial court entered an order of dependency finding that M.B. had sexually abused D.W. two different times; that G.B. failed to protect her daughter by refusing to support her emotionally after being informed of the abuse; and that G.B. neglected to provide D.W. with the necessary medical, legal, and psychological services. Based on these findings, the trial court concluded that all five children were in danger of prospective abuse and neglect. Accordingly, the trial court declared them all dependent.[3]
APPEAL
On appeal, the First District reversed. M.B., 21 Fla. L. Weekly at D1817, 1996 WL 453438. The district court reasoned that once D.W. failed to identify her stepfather as the abuser, her earlier unsworn statements became prior inconsistent statements and were, thus, inadmissible as substantive evidence. Id. The district court cited the common law rule that unsworn, out-of-court statements which were inconsistent with a witness’s in-court testimony were never admissible as substantive evidence and only admissible for the limited purpose of impeachment. Id. Therefore, the court concluded that “the only rational interpretation that can be given to the term ‘statement,’ as used in section 90.803(23), is that in order for it to be admitted as substantive evidence, it must be consistent with the child’s in-court testimony.” Id. Based on its conclusion that D.W.’s out-of-court statements were inadmissible, the district court determined that the medical evidence, by itself, was “insufficient to sustain the dependency adjudication,” i.e., did not meet the preponderance of the evidence standard. Id. The court cited State v. Green, 667 So.2d 756 (Fla.1995), in support of its holding. Finally, the court acknowledged a concern about its ruling and certified the above questions for this Court’s review. Id.
REQUIREMENTS OF SECTION 90.803(23)
We first hold that section 90.803(23), Florida Statutes (1995), permits the admission into evidence of certain out-of-court statements of a child crime victim without the necessity that those statements be consistent with the child’s trial testimony. Section 90.803(23) provides:
The provision of s. 90.802 to the contrary notwithstanding, the following are not inadmissible as evidence, even though the declarant is available as a witness:
[[Image here]]
(23)HEARSAY EXCEPTION; STATEMENT OF CHILD VICTIM.
(a) Unless the source of information or the method or circumstances by which the statement is reported indicates a lack of trustworthiness, an out-of-court statement made by a child victim with a physical, mental, emotional, or developmental age of 11 or less describing any act of child abuse or neglect, any act of sexual abuse against a child, the offense of child abuse, the offense of aggravated child abuse, or any offense involving an unlawful sexual act, contact, intrusion, or penetration performed in the presence of, with, by, or on the declarant child, not otherwise admissible, is admissible in evidence in any civil or criminal proceeding if:
1. The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. In making its determination, the court may consider the mental and physical age and maturity of the child, the *1158 nature and duration of the abuse or offense, the relationship of the child to the offender, the reliability of the assertion, the reliability of the child victim, and any other factor deemed appropriate; and
2. The child either:
a. Testifies; or
b. Is unavailable as a witness, provided that there is other corroborative evidence of the abuse or offense. Unavailability shall include a finding by the court that the child’s participation in the trial or proceeding would result in a substantial likelihood of severe emotional or mental harm, in addition to findings pursuant to section 90.804(1).
(b) In a criminal action, the defendant shall be notified no later than 10 days before trial that a statement which qualifies as a hearsay exception pursuant to this subsection will be offered as evidence at trial. The notice shall include a written statement of the content of the child’s statement, the time at which the statement was made, the circumstances surrounding the statement which indicate its reliability, and such other particulars as necessary to provide full disclosure of the statement.
(c) The court shall make specific findings of fact, on the record, as to the basis for its ruling under this subsection.
Since the legislature enacted section 90.803(23) in 1985, we have decided various questions of law concerning this important hearsay exception.[4]
*1159 In 1993, we acknowledged that the statute’s purpose as “clearly [being] the Florida Legislature’s response to the need to establish special protections for child victims in the judicial system.” State v. Jones, 625 So.2d 821, 825 (Fla.1993).[5] We found that the statute’s legislative history revealed an intent to expand the medical diagnosis and treatment and excited utterance hearsay exceptions in order to include an exception for statements of child abuse victims. Id. We noted that by “providing for such safeguards as a hearing out of the jury’s presence in order to assure reliability of the statements and special notice of the intent to use the statements, the Legislature sought to strike a balance between the need to consider child hearsay statements in judicial proceedings and the rights of the accused.” Id. at 826.
In State v. Townsend, 635 So.2d 949 (Fla.1994), we emphasized the heavy responsibility of the trial court in ensuring that a high standard for reliability is met before a child victim’s hearsay statement may be admitted into evidence.[6] Beyond the factors *1160 for consideration specifically enunciated in the statute,[7] we established the following nonexclusive list:
[A] consideration of the statement’s spontaneity; whether the statement was made at the first available opportunity following the alleged incident; whether the statement was elicited in response to questions from adults; the mental state of the child when the abuse was reported; whether the statement consisted of a child-like description of the act; whether the child used terminology unexpected of a child of similar age; the motive or lack thereof to fabricate the statement; the ability of the child to distinguish between reality and fantasy; the vagueness of the accusations; the possibility of any improper influence on the child by participants involved in a domestic dispute; and contradictions in the accusation. In sum, as noted by the United States Supreme Court in [Idaho v.] Wright, [497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) ] a court is to use a totality of the circumstances evaluation in determining reliability.
Id. at 957-58 (citations omitted) (emphasis added).[8] Our decisions in Jones and Townsend stand for the dual conclusions that strict standards of reliability must be applied before admitting child hearsay statements, and, once those standards have been met, such statements may be admitted and considered as substantive evidence by the trier of fact.
CONSISTENCY
Today, in reaffirming those conclusions, we hold that the admission and subsequent consideration of the statements as substantive evidence by the trier of fact does not require that the child’s testimony at trial be consistent with the out-of-court statements. We believe a reasonable analysis of the legislature’s intent as discussed above and a plain reading of the statute itself support this conclusion.[9] The statute explicitly provides for admission of a statement once the trial court finds (1) it is reliable, and (2) the child testifies. § 90.803(23)(a) 1., 2. On the other hand, the statute contains no “consistency” requirement. In contrast, and to demonstrate that the legislature knew how to impose a “consistency” requirement if desired, the legislature specifically addressed the issue of consistency between out-of-court statements and in-eourt testimony in' section 90.801, Florida *1161 Statutes (1995), in defining non-hearsay.[10]
We have stated that “[t]he legislature is presumed to know the meaning of words and the rules of grammar, and the only way the court is advised of what the legislature intends is by giving the [statutory language its] generally accepted construction.” Florida State Racing Comm’n v. Bourquardez, 42 So.2d 87, 88 (Fla.1949). Therefore, if the legislature intended to use the modifier “consistently” with the word “testifies,” it could have said so. Since it did not, we have concluded in similar situations that “there is no occasion for resorting to the rules of statutory interpretation and construction.” Holly v. Auld, 450 So.2d 217, 219 (Fla.1984). Further, we find that a literal interpretation of the statute without a requirement of “consistency” does not lead to an “unreasonable or ridiculous conclusion.” Id. To the contrary, if we judicially imply an in-court testimony consistency requirement, we would be ignoring the major purpose of the act and would render at least part of section 90.803(23) meaningless. Surely, at least one purpose of the act was to allay the problems inherent in a child victim’s live appearance and testimony at trial, and to permit an additional means of providing a child’s evidence for the trier of fact.
One respected commentator has noted some confusion on the case law on this issue:
There is some authority that, if the victim’s trial testimony does not indicate that abuse occurred, the victim’s out-of-court statements that the abuse occurred are not sufficient, by themselves, to support a conviction. The rationale for these decisions is not clear. If the rationale is that the out-of-court statement is lacking the necessary reliability as a result of the circumstances in which it was made, the analysis is appropriate. Section 90.803(23) and the defendant’s confrontation rights require this analysis. If the basis is that, because the out-of-court statement which is admissible under a recognized hearsay exception, is inadmissible simply because it is inconsistent with the in-court testimony of the witness, the reasoning should not be followed. Although a prior statement which is admitted pursuant to section 90.801(2) is not sufficient by itself to support a conviction, the rationale should not be extended to statements admitted under a section 90.803 hearsay exception. These exceptions are surrounded by circumstantial guarantees of reliability which are not necessarily present when a statement is offered under section 90.801(2).
Charles W. Ehrhardt, Florida Evidence § 803.23, at 702 (1996 ed.) (footnote omitted) (emphasis added). We agree with this commentary.
Employing similar reasoning in an analogous situation, for example, we have observed that “an identification made shortly after the crime is inherently more reliable than a later identification in court.” State v. Freber, 366 So.2d 426, 428 (Fla.1978). Realizing that physical appearances can change and memories dim, we concluded that the use of prior identifications as substantive evidence of identity was imperative or “conviction would in some instances be impossible.” Id. Under section 90.801(2)(c), the codification of the Freber holding, this out-of-court statement of identification is considered non-hearsay and, thus, “is admissible in court to prove the truth of the matter asserted, e.g., to prove that the person identified was the person who committed the act.” Charles W. Ehrhardt, Florida Evidence § 801.9, at 592 (1996). More importantly, no in-court consistency requirement attaches as the “failure of the witness to repeat the identification in *1162 court does not affect the admissibility of evidence of the prior identification.” Id. at 582. The same may be said of the provisions of section 90.803(23).
Against this backdrop, we cannot accept the district court majority’s holding that the child’s trial testimony must be consistent with the out-of-court statements as a condition of admissibility, nor its conclusion that it is not “pertinent to our decision whether the child’s earlier, unsworn statements were properly determined to be reliable, because, as we have said, the statements were simply inadmissible hearsay,” M.B., 21 Fla. L. Weekly at D1818, 1996 WL 453438. Based on the above analysis, we hold that hearsay statements such as those in this ease, even if “inconsistent” with a child’s in-court testimony, are admissible as substantive evidence in a dependency hearing once they have satisfied the stringent reliability safeguards established in section 90.803(23) and refined in our prior case law. Accordingly, we answer the first certified question in the affirmative.

GREEN

We must also address the district court majority’s concern with our ruling in State v. Green, 667 So.2d 756 (Fla.1995), wherein we determined that a prior statement of the child victim, directly conflicting with the victim’s trial testimony, standing alone, was insufficient to sustain a criminal conviction.[11] We held that convicting the defendant “based solely on the prior inconsistent statements of the victim would indeed create too great a risk of ‘convicting an innocent accused,’ especially when we consider the immense potential for manipulation of a retarded child.” Green, 667 So.2d at 761.
However, consistent with our emphasis on the importance of the reliability determination of the child’s hearsay statements, we have refused to establish “a blanket rule that no conviction can stand based solely on hearsay testimony.” Anderson v. State, 655 So.2d 1118, 1120 (Fla.1995). In Green, we explicitly noted that our prior decisions barring criminal convictions “based solely on the prior inconsistent statements of the victim ... [do] not mean that inconsistent statements admitted under section 90.803(23) can never be used as substantive evidence when other proper corroborating evidence is admitted.” Green, 667 So.2d at 761.
In Green, unlike the instant case, the alleged victim, a mentally retarded child of the mental age of seven, explicitly “recanted” her earlier statements implicating Green as her abuser. The child victim had an IQ of 50, and before accusing Green, she had accused another man. She not only testified at trial that Green had never abused her, but she also denied ever telling anyone that he had and, indeed, at trial she identified a different alleged abuser. We found that the child’s out-of-court testimony was insufficient as a matter of law to sustain the criminal conviction. In essence, we determined that the reliability of the child’s statement identifying Green had been so diminished by the child’s other testimony that we could not have sufficient confidence in the criminal conviction to allow it to stand. See also State v. Moore, 485 So.2d 1279 (Fla.1986); Santiago v. State, 652 So.2d 485 (Fla. 5th DCA 1995).
Our rulings in Green and Moore were primarily concerned with the minimum standard of evidence required to sustain a criminal conviction and the potential miscarriage of justice that could occur if that standard was not maintained. We were also concerned, of course, about the constitutional rights of the accused in a criminal proceeding. See Green, 667 So.2d at 760. Those concerns are not present in these dependency proceedings, where it is undisputed that the child victim was the subject of sexual abuse, and the issue is the child’s welfare and not the alleged abuser’s criminal culpability. We conclude that Green, because of its unique circumstances and the substantial distinctions from this case as noted above, does not control the outcome here.
Furthermore, whether D.W.’s testimony at trial amounted to a “recantation” of her earlier statements, as the district court majority *1163 opinion characterizes her trial testimony, is open to question. To recant is “[t]o withdraw or repudiate formally and publicly.” Black’s Law Dictionary at 1267 (6th ed.1990) (citing Pradlik v. State, 131 Conn. 682, 41 A.2d 906, 907 (1945)). Significantly, D.W. did not testify that her stepfather did not abuse her, only that “someone” had sexually assaulted her. She did not deny her previous statements. Therefore, her trial testimony certainly did not exonerate her stepfather and was not the equivalent of the conflicting and contradictory testimony involved in Green.

EVIDENTIARY STANDARD TO ESTABLISH DEPENDENCY

Finally, we find that an affirmative answer to the second certified question is dictated by our affirmative answer to the first question permitting admission and consideration of the child’s out-of-court statements.[12] When combined with the objective and unchallenged corroborating medical evidence that was presented in this case, that some form of sexual penetration had occurred, we find the evidence sufficient to meet the preponderance of the evidence standard. We note that the majority opinion below also acknowledged that the medical evidence of D.W.’s sexual abuse “could conceivably be viewed as corroborating [her] report of abuse.” M.B., 21 Fla. L. Weekly at D1818, 1996 WL 453438. Again, we must remember that the alleged abuser’s culpability is not the focus of a civil dependency proceeding.[13] Dependency proceedings are to be initiated for “the protection of the child and not the punishment of the person creating the condition of dependency.” § 39.404(2), Fla. Stat. (1995). Accordingly, we answer the second certified question in the affirmative.
In summary, we answer both certified questions in the affirmative, quash the decision under review, and remand the case to the First District with directions for further proceedings consistent with this opinion, including the resolution of any issues not previously decided.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING and WELLS, JJ., concur.

. We are aware that on January 1, 1997, HRS •was split into two departments: the Department of Children and Family Services, and the Department of Health.

. Of note, our recent consolidated opinion in Hadden v. State, 690 So.2d 573, 575 (Fla.1997), held that child sexual abuse accommodation syndrome "has not been proven by a preponderance of scientific evidence to be generally accepted by a majority of experts in psychology.” No issue about such testimony has been - raised in this case.

. Section 39.01(10), Florida Statutes (1993), defines "Child who is found to be dependent” to include one found by the court:
(a) To have been abandoned, abused, or neglected by his parents or other custodians.
.... [or]
(e) To be at substantial risk of imminent abuse or neglect by the parent or parents or the custodian.

. See Heuss v. State, 687 So.2d 823 (Fla.1996); State v. Green, 667 So.2d 756 (Fla.1995); Anderson v. State, 655 So.2d 1118 (Fla.1995); State v. Dupree, 656 So.2d 430 (Fla.1995); State v. Cherryhomes, 647 So.2d 841 (Fla.1994); Young v. State, 645 So.2d 965 (Fla.1994); Seifert v. State, 636 So.2d 716 (Fla.1994); Feller v. State, 637 So.2d 911 (Fla.1994); State v. Townsend, 635 So.2d 949 (Fla.1994); Hopkins v. State, 632 So.2d 1372 (Fla.1994); State v. Jones, 625 So.2d 821 (Fla.1993); State v. Kopko, 596 So.2d 669 (Fla.1992); Pardo v. State, 596 So.2d 665 (Fla. 1992); Perez v. State, 536 So.2d 206 (Fla.1988); Glendening v. State, 536 So.2d 212 (Fla.1988); State v. Jano, 524 So.2d 660 (Fla.1988).
There is an on going debate about the reliability of children’s out-of-court statements about sexual abuse. The New Jersey Supreme Court has stated that "a child's out-of-court statements are often more reliable than a child’s in-court testimony due to the lapse of time between the assault and the trial as well as the stress of testifying, especially when the defendant is a family member or authority figure.” R.S. v. Knighton, 125 N.J. 79, 592 A.2d 1157, 1163-64 (1991) (citation omitted). Similarly, California's Court of Appeal has observed that:
The factual background of the typical dependency case often reveals statements of child victims which seem under the circumstances to be reliable, and which juvenile court judges should be entitled to consider for the substance and truth of the statement. Reproduction of these statements from the mouths of victims vety often, however, becomes impossible for reasons revealed by the cases previously cited. A child will be afraid publicly to accuse his or her father; the child may be cowed by the formal setting of the court; he or she may be intimidated by adverse counsel and cross-examination.
In re Carmen O, 28 Cal.App.4th 908, 33 Cal.Rptr.2d 848, 852 (1994) (footnote omitted); see also Patterson v. State, 212 Ga.App. 257, 441 S.E.2d 414, 415 (1994) (finding child victim’s prior inconsistent statements constituted substantive evidence of defendant’s guilt although child recanted at trial); contra Commonwealth v. Costello, 411 Mass. 371, 582 N.E.2d 938, 941-42 (1991) (recognizing “child sexual abuse cases engender special evidentiary problems” but finding no hearsay exception admitting victim's prior inconsistent statements as substantive evidence).
Likewise, a review of the literature reveals similarly divergent viewpoints on this sensitive issue. For example, one commentator offers several justifications for finding a child’s out-of-court statements intrinsically reliable and trustworthy:
First, it is highly unlikely that children persist in lying to their parents or other figures of authority about sex abuse. Second, children do not have enough knowledge about sexual matters to lie about them.
Judy Yun, A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases, 83 Co-lum. L.Rev. 1745, 1751 (1983) (footnotes omitted). Moreover, the "victim’s out-of-court statements may, in fact, be more trustworthy than his or her in-court testimony” due to the stress and trauma of rehashing bad memories, hostile attacks on the child’s credibility, facing the alleged perpetrator again, and testifying against a close relative. Id. at 1751-52 (footnotes omitted). In this situation, "children, if they reply at all, often give confused and inaccurate answers ... are susceptible to leading questions and often tailor their replies to appease the examining attorney.” Id. at 1752 (footnotes omitted). Another commentator relates that:
The overwhelming opinion of mental health workers, social welfare workers, and police investigators is that children almost never make false reports. Empirical studies (one which involved the use of a polygraph) confirm the fact that false reports are extremely rare. Studies also indicate that false denials or re *1159 tractions by the victim are actually more common than false reports. Of the few reported false accusations, the child is usually coaxed to lie by an adult and readily admits the lie upon direct questioning.
Glen Skoler, New Hearsay Exceptions for a Child's Statement of Sexual Abuse, 18 J. Marshall L.Rev. 1, 44-45 (1984) (footnotes omitted).
On the other hand, another observer maintains that:
Children’s memories may become distorted over time. Consequently, children sometimes have difficulty maintaining a distinction in their own minds between real and fantasized sexual abuse. Along with the passage of time, stress may adversely affect the veracity of children's memories. In many cases, the adults to whom the children confess harbor feelings regarding the named perpetrator. Children may know of, and their allegations may be affected by, these feelings. This is especially true when the alleged abuser is a family member or friend.
A child may lie or exaggerate in reporting an incident of abuse. Courts may fail to consider the possibility that children who know what a lie is may still lie, and lie well. Thus, while courts tend to trust the testimony of young children, whom they believe "are unable to practice real deception,” one study indicated that even children as young as three years old can lie effectively. Since children do not have an independent concept of a lie, a child may purposely lie to please the adult. For a child, " Truth’ can be what pleases the adult.”
Robert G. Marks, Should We Believe the People Who Believe the Children?: The Need For a New Sexual Abuse Tender Years Hearsay Exception Statute, 32 Harv. J. on Legis. 207, 223-24 (1995) (footnotes omitted).
This brief review of the case law and literature reveals starkly opposing views on this most troublesome of issues. These differing opinions underscore the trial court’s crucial role in scrutinizing a child’s statements for reliability in order to serve the twin goals of protecting the child and affording the alleged abuser a fair hearing.

. In its preamble to the enactment of the statute in 1985, the legislature expressed the following concerns:
WHEREAS, reports of sexual abuse and the commission of unlawful sexual acts against children have increased dramatically, and
WHEREAS, children are in need of special protection as victims or witnesses in the judicial system as a result of their age and vulnerability, and
WHEREAS, the rights of the defendant in a criminal prosecution must be balanced with the right of a child victim to be protected, and
WHEREAS, a young child is able to relate descriptions of acts involving sexual contact and sexual acts performed in the child’s presence in a reliable manner based upon consideration of the child’s age and development, and
WHEREAS, the credibility and reliability of a child's testimony can be assured by procedural safeguards that will not infringe upon the defendant’s right to a fair trial or the rights of any party in a judicial proceeding, and
WHEREAS, it is necessary that safeguards be instituted for the children of the State of Florida who are victimized to assure that their right to be free from emotional harm and trauma occasioned by judicial proceedings is protected by the court, and
WHEREAS, effective handling of child abuse cases in the judicial system is essential to future protection of the child, and
WHEREAS, the Legislature recognizes that special provisions are necessary to assure that evidence of unlawful sexual offenses against children is admissible in the court, based upon sound principles of child development, and
WHEREAS, the assistance of professionals and persons having a special relationship with the child can aid the courts in assuring full access to legal remedies for the protection of children, NOW, THEREFORE.
Ch. 85-53, Laws of Fla. (emphasis added).

. Paramount among the constitutional rights of the accused to be weighed by the trial court, of course, is the right of confrontation. The reliability to be demonstrated in order to allow admission of the statement must be measured against and commensurate with the nature and degree of importance of these rights. Trial courts must be ever conscious of the important *1160 values being weighed each time a statement is proffered under the statute.

. Beyond several enumerated indicia of reliability, the trial court may consider “any other factor deemed appropriate” to assist it in evaluating the statements for "sufficient safeguards of reliability.” § 90.803(23)(a)l„ Fla. Slat. (Supp.1996).

. Similarly, on the threshold issue of reliability. Professor Ehrhardt has written that:
The subsection sets forth some of the criteria that the judge should use in making the reliability determination: "the mental and physical age and maturity of the child, the nature and duration of the abuse and offense, the relationship of the child to the offender” and the reliability of the victim. The provision makes clear that the court can consider any other factor in making its determination lhaL it deems appropriate. Among the factors indicating reliability of the child’s hearsay statement that have been considered by various appellate courts in individual cases are that the child was still emotionally affected by the situation when the child reported it, the statement was spontaneous and was made in response to questions from adults, the statement was made at the first available opportunity and consisted of a child-like description of the act, the use of terminology unexpected of a child of similar age, the lack of motive to fabricate, the making of the statement to a number of people and not only to the mother, the mental competence of the child, the ability of the child to distinguish reality from fantasy, whether the statements were vague and partially contradictory, the possibility of improper influence on the child by participants in a domestic dispute, and the time of the incident relative to the time of the statement. In determining reliability the court should not consider other evidence which corroborates the truth of the child's statement. Before statements of a child to an expert evaluating the child for sexual abuse are admitted at trial under section 90.803(23), the supreme court has strongly suggested that the interview be video-taped to ensure the trustworthiness of the communication and that the expert did not lead the child during the interview.
Charles W. Ehrhardt, Florida Evidence § 803.23, at 697-98 (1996 ed.) (footnotes omitted).

.This does not mean, for example, that a trial court may not be asked to reconsider any previous finding of reliability based upon subsequent inconsistent statements, including those made at trial, of the child victim.

. Section 90.801 provides in pertinent part:
(2) A statement is not hearsay if the declar-ant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is:
(a) Inconsistent with the defendant’s testimony and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding or in a deposition;
(b) Consistent with the declarant’s testimony and is offered to rebut an express or implied charge against him of improper influence, motive, or recent fabrication; or
(c) One of identification of a person made after perceiving the person.
Therefore, for non-hearsay, the issue of consistency between out-of-court statements and trial testimony is specifically addressed in paragraphs (2)(a) and (b) of the statute. There is no similar language in section 90.803(23).

. In Green we also held that a discovery deposition could not be used as substantive evidence under the provisions of section 90.80 l(2)(a).

. Section 39.408(2)(b), Florida Statutes (1993), provides in pertinent part that:
Adjudicatory hearings shall be conducted by the judge without a jury, applying the rules of evidence in use in civil cases and adjourning the hearings from time to time as necessary. In a hearing on a petition in which it is alleged that the child is dependent, a preponderance of evidence will be required to establish the state of dependency.
(Emphasis added). Definitions abound for what constitutes the preponderance of the evidence standard. McCormick writes that:
The most acceptable meaning to be given the expression, proof by a preponderance, seems to he proof which leads the jury to find the existence of the contested fact is more probable than its nonexistence. Thus the preponderance of the evidence becomes the trier's belief in the preponderance of probability.
McCormick on Evidence 575 (4th ed.1992). Another definition is that "evidence preponderates when it is more convincing to the trier than the opposing evidence.” Id. at 574.

. In comparison, the legislature and the courts have required clear and convincing evidence to support the more drastic, permanent protective action of terminating parental rights. § 39.467(3), Fla. Stat. (1993). This Court has noted “that an order of termination of parental rights permanently deprives the parents or legal guardian of any right to the child." Stefanos v. Rivera-Berrios, 673 So.2d 12, 13 (Fla.1996). See also Padgett v. Department of Health & Rehab. Servs., 577 So.2d 565 (Fla.1991); S.Q. v. Department of Health & Rehab. Servs., 687 So.2d 319 (Fla. 1st DCA 1997); P.A. v. Department of Health & Rehab. Servs., 685 So.2d 92 (Fla. 4th DCA 1997). Clear and convincing evidence is an
intermediate level of proof [that] entails both a qualitative and quantitative standard. The evidence must be credible; the memories of the witnesses must be clear and without confusion; and the sum total of the evidence must he of sufficient weight to convince the trier of fact without hesitancy.
In re Adoption of E.A.W., 658 So.2d 961, 967 (Fla.1995) (quoting In re Davey, 645 So.2d 398, 404 (Fla.1994)). Since the United States Supreme Court has held that parental rights implicate a fundamental liberty interest, Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982), the state must establish that the termination of parental rights "is the least restrictive means of protecting the child from serious harm.” Padgett, 577 So.2d at 571.