829 So.2d 932 (2002)
Darrell MIKLER, Appellant,
v.
STATE of Florida, Appellee.
No. 4D01-1369.
District Court of Appeal of Florida, Fourth District.
October 9, 2002.
Rehearing Denied November 12, 2002.
*933 Carey Haughwout, Public Defender, Jeffrey Anderson, Assistant Public Defender, and Samuel A. Walker, Assistant Public Defender, Certified to Practice as a Member of an Out-of-State Bar, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Steven R. Parrish, Assistant Attorney General, Fort Lauderdale, for appellee.
GROSS, J.
Darrell Mikler appeals his conviction of four counts of sexual battery, one count of kidnapping, and one count of lewd and lascivious molestation. We affirm.
The victim in this case was eleven years old. She testified at trial. She told the jury that she had been selling mangos door-to-door when appellant grabbed her into his house, took her into his bedroom, and ordered her to take off her clothes. He sucked on the victim's breasts and put his penis into her vagina, anus, and mouth.
After the trial court ruled that it was admissible under section 90.803(23), Florida Statutes (2001), the state played an audio tape of a statement the victim gave to the investigating detective. On the tape, the victim recounted that Mikler grabbed her, covered her mouth, told her to take off her clothes, penetrated her, licked her "down there," and reinserted himself. The victim said that she was forced to "suck his thing" while she was in the bathroom sitting on the toilet.
A nurse practitioner conducted a physical and pelvic examination and a rectal inspection of the victim on the day of the incident. She opined that the victim had been penetrated within twenty-four hours prior to the examination. She observed redness on the upper part of the anal opening and swelling which suggested that there may have been anal penetration.
As he was being handcuffed, appellant told the arresting officer that he was "sorry," that he "f----d up big time," that he was sorry if he hurt the little girl, and asked if she was okay. While he was being placed in the back seat of the squad car, appellant said: "I really screwed up. I'm going away for a very long time."
Based on a DNA comparison between vaginal swabs taken from the victim and oral swabs taken from Mikler, a DNA *934 analysis expert testified that Mikler could not be excluded as the donor of the DNA in the victim's vagina. Another expert opined that the odds were less than one in six billion that the DNA in the victim came from a male other than Mikler.
Mikler's defense was that some other man had sexual relations with the victim. He said that the victim had come by his house asking about a mango that she had left in his sink. She told him that she had given "head and stuff like that" to the operator of a small store in return for candy and soda. Mikler testified that the victim expressed an interest in having sex with him, but he did not take her up on the offer. When he tried to get her to leave, the victim began to cry and was angry about her mango money, so he gave her several dollars.
We write to address Mikler's attack on his conviction of count IV of the information, which charged a sexual battery based on the union of Mikler's tongue with the victim's vagina. The only evidence of that particular act came from the victim's taped statement to the investigating detective. The victim did not mention this assault during her in-court testimony. Mikler argues that "unsworn, uncorroborated child-hearsay statements that are inconsistent with the victim's trial testimony are insufficient, as a matter of law, to sustain a conviction."
The supreme court held in Perez v. State, 536 So.2d 206, 209 (Fla.1988), that "section 90.803(23) comports with the requirements of the confrontation clauses of both the federal constitution and the Florida Constitution." In State v. Townsend, 635 So.2d 949, 956-57 (Fla.1994), the supreme court again ruled that the statute was constitutional, taking into consideration Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). Townsend was a case involving section 90.803(23)(a)2.b., where the child declarant is "unavailable" as a witness and does not testify at trial. In such a case, the supreme court set forth the procedure a trial judge "must adhere to" in order to comply with state and federal constitutional requirements:
First, the trial judge must determine whether the hearsay statement is reliable and from a trustworthy source without regard to corroborating evidence. If the answer is yes, then the trial judge must determine whether other corroborating evidence is present. If the answer to either question is no, then the hearsay statements are inadmissible.
Townsend, 635 So.2d at 957.
From reading Townsend, it is unclear whether the supreme court intended this two-step analysis to apply to the situation where the child declarant testifies at trial. However, a close reading of Townsend convinces us that the supreme court did not intend to rewrite the statute. Section 90.803(23)(a)2.b., Florida Statutes (2001), requires "other corroborative evidence of the abuse or offense" only in the situation where the child is "unavailable as a witness." Townsend was a case where the state and defense stipulated that the child was incompetent to testify at trial. In formulating Townsend's two-step test, the supreme court was dealing with an unavailable child and the statute's corroboration requirement.
Considering the rationale for requiring corroboration, it makes no sense to require "other corroborative evidence of abuse" where the child testifies at trial and is available for cross-examination. The extra modicum of reliability provided by some corroboration is rendered unnecessary by the ability to cross-examine the child; cross-examination acts "as a safeguard of the reliability of criminal proceedings" since cross-examination is "`the greatest legal engine ever invented for the discovery *935 of truth'." Conner v. State, 748 So.2d 950, 955 (Fla.2000) (quoting California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (quoting 5 J. WIGMORE, EVIDENCE § 1367 (3d ed.1940))). In this respect, the mechanism of section 90.803(23)(a)2.a. is similar to 90.801(2)(c), where a statement of identification of a person is treated as non-hearsay "if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement."
In R.U. v. Department of Children & Families, 777 So.2d 1153, 1158-59 (Fla. 4th DCA 2001), this court cited Townsend and held that if a
court rules that the hearsay statement is "reliable and from a trustworthy source," the court may admit the hearsay statement into evidence, if the child declarant also testifies at trial, or if the child declarant is determined to be unavailable and there is "other corroborative evidence of the abuse or offense."
(Emphasis added, italics in original).
In addition to those factors listed in the section 90.803(23)(a)1., the supreme court in Townsend established a nonexclusive list for the trial court to consider in evaluating the reliability of a child's out of court statement under the statute:
a consideration of the statement's spontaneity; whether the statement was made at the first available opportunity following the alleged incident; whether the statement was elicited in response to questions from adults; the mental state of the child when the abuse was reported; whether the statement consisted of a child-like description of the act; whether the child used terminology unexpected of a child of similar age; the motive or lack thereof to fabricate the statement; the ability of the child to distinguish between reality and fantasy; the vagueness of the accusations; the possibility of any improper influence on the child by participants involved in a domestic dispute; and contradictions in the accusation.
Townsend, 635 So.2d at 957-58.
The trial court concluded that the victim's taped statement was reliable, observing that the eleven-year-old was able to "clearly articulate the incident which involved sexual abuse against her," the "child's answers were responsive and expansive," and the "statement was made on the same day of the incident." The trial court's specific findings satisfied section 90.803(23)(c); the victim's testimony at trial met the requirement of section 90.803(23)(a) 2.a. The statement was therefore admissible under section 90.803(23).[1]See R.U., 777 So.2d at 1158-59.
If a statement is admissible under section 90.803(23), it may be "considered as substantive evidence by the trier of fact." Dep't of Health & Rehab. Services v. M.B., 701 So.2d 1155, 1160 (Fla. 1997). Consideration of a statement admitted under section 90.803(23) "as substantive evidence by the trier of fact does not require that the child's testimony at trial be consistent with the out-of-court statements." Id.; see Williams v. State, 714 So.2d 462, 466 n. 5 (Fla. 3d DCA 1997) (expressing the view that a "child victim hearsay statement is sufficient, on its own, to sustain a conviction if the statement is determined to carry the `sufficient safeguards of reliability' ... required by section 90.803(23)"). In M.B., the supreme court agreed with Professor Ehrhardt's conclusion that a statement admitted under *936 a section 90.803 hearsay exception is "surrounded by circumstantial guarantees of reliability" to allow use of the statements as substantive evidence. 701 So.2d at 1161 (quoting CHARLES W. EHRHARDT, FLORIDA EVIDENCE § 803.23, at 702 (1996 ed.)).
In M.B., the supreme court clarified the scope of its previous decisions in State v. Green, 667 So.2d 756 (Fla.1995), and State v. Moore, 485 So.2d 1279 (Fla.1986). In Green, the court held that a "prior statement of the child victim, directly conflicting with the victim's trial testimony, standing alone, was insufficient to sustain a criminal conviction." M.B., 701 So.2d at 1162. The supreme court referenced the language in Green that the opinion did `"not mean that inconsistent statements admitted under section 90.803(23) can never be used as substantive evidence when other proper corroborating evidence is admitted." `Id. (quoting Green, 667 So.2d at 761). The supreme court identified the special facts in Greenthe child victim had an IQ of 50; before accusing Green she had accused another; she testified at trial that Green had never abused her; she identified a different abuser at trialand concluded: "In essence, we determined [in Green ] that the reliability of the child's statement identifying Green had been so diminished by the child's other testimony that we could not have sufficient confidence in the criminal conviction to allow it to stand." Id.
The supreme court also discussed State v. Moore in M.B. Moore was a homicide case where the only evidence of guilt was two witnesses' testimony before the grand jury that the defendant had killed the victim. The witnesses appeared at trial and testified that they had lied to the grand jury. The supreme court reversed a second degree murder conviction, holding that a prior inconsistent statement was not sufficient to sustain the conviction when the prior statement was the only substantive evidence of guilt. Moore, 485 So.2d at 1281-82.
Discussing Green and Moore in M.B., the supreme court wrote:
Our rulings in Green and Moore were primarily concerned with the minimum standard of evidence required to sustain a criminal conviction and the potential miscarriage of justice that could occur if that standard was not maintained. We were also concerned, of course, about the constitutional rights of the accused in a criminal proceeding.
M.B., 701 So.2d at 1162. The court concluded that Green and Moore did not control the dependency proceeding at issue there. Id.
This case is a criminal proceeding, so we must still confront Green and Moore, as explained in M.B., to decide this case. Moore is distinguishable and does not control. That case involved only the use of prior inconsistent statements as substantive evidence. Unlike section 90.803 exceptions to the hearsay rule, which are traditionally received as substantive evidence, prior inconsistent statements are not "surrounded by circumstantial guarantees of reliability." M.B., 701 So.2d at 1161 (quoting EHRHARDT, FLORIDA EVIDENCE § 803.23, at 702).
Two factors distinguish this case from Green. First, the victim's out-of-court statement in Green directly conflicted with her trial testimony-she testified at trial that the defendant had never abused her and identified another as her attacker. In this case there is no such direct conflict. The victim identified Mikler as her attacker and described three types of sexual battery that occurred one after the other. She did not mention the tongue-to-vagina battery in court, nor was she cross-examined about the omission. Her in-court testimony *937 did not deny that that act had occurred.
Second, using the language of Green, there was "other corroborating evidence" that a sexual attack occurredthe testimony of the nurse practitioner, the DNA expert, and Mikler's statements to the arresting officer. Such testimony was probative on count IV because the tongue-to-vagina battery occurred during the continuing sexual attack for which there was corroboration. For these reasons, the evidence to support a conviction on count IV went beyond the "minimum standard of evidence required to sustain a criminal conviction." M.B., 701 So.2d at 1162.
Mikler's other main point on appeal concerns comments made by the prosecutor during closing argument. Any preserved errors were harmless; none were fundamental.
AFFIRMED.
WARNER and HAZOURI, JJ., concur.
NOTES
[1] Even assuming "other corroborative evidence" is required in this case to admit a section 90.803(23)(a)2.a. statement under Townsend, the testimony of the nurse practitioner, the DNA expert, and Mikler's statements to the arresting officer satisfied this requirement.