**Bernardino CABRERA, Appellant,**

v.

**STATE of Florida, Appellee.**

**No. 1D15–1821.**

District Court of Appeal of Florida,
First District.

Nov. 9, 2016.

Nancy A. Daniels, Public Defender, and Victor Holder, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Trisha Meggs Pate, Bureau Chief, and Quentin Humphrey, Assistant Attorney General, Tallahassee, for Appellee.

LEWIS, J.

Appellant, Bernardino Cabrera, appeals his judgment and sentence for sexual battery on a child under twelve years of age. We affirm, but we write only to address whether the trial court erred by admitting the child hearsay statements contained in the Child Protective Team ("CPT") video.

**Facts**

Appellant was charged with sexual battery on a child under twelve years of age based on acts he allegedly committed against P.C. between August 2012 and June 2013. The State filed a notice of its intent to introduce the child hearsay statements P.C. had made about the alleged sexual battery during a forensic interview conducted by the CPT. At the hearing on the State's notice, the trial court indicated it had reviewed the videotaped CPT interview and heard the testimony of Jesse Kemper, the CPT case specialist who had conducted the forensic interview with P.C. on July 18, 2013.

Kemper testified that P.C. was friendly and open, appeared to understand the difference between the truth and a lie for a five-year-old child of her cognitive abilities, and accurately identified all the body parts. P.C. called her vagina "lake" and "bottom" and disclosed that her father sexually abused her by touching her there one time. P.C. appeared reliable and Kemper had no reason to believe that P.C. was lying or was being coached. Kemper did not notice any "red flags," P.C.'s terminology in disclosing the sexual abuse was consistent with her age, and P.C.'s description of the abuse itself was "fairly detailed" and consistent with her age, though she was "less detailed on other parts of the description." When asked about truth versus lies in the context of crayons, P.C. initially got the color of the purple crayon wrong and gave an incorrect answer about whether it would be the truth or a lie if Kemper said the purple crayon was red.

Kemper determined that P.C. appreciated the difference between truth and lies and her behavior with regard to the crayons was consistent with a child her age and was not unexpected. P.C. occasionally gave answers that did not make sense, but that could also be expected for a child her age. For example, when asked what she did with her bottom, P.C. said you put a marker on it. Kemper explained that when children are trying to avoid something, they often name an object they are holding, and in this case P.C. was holding a marker. There were allegations of domestic violence and substance abuse in the family.

The videotaped CPT interview reflects in part that upon further questioning, P.C. was able to correctly identify whether Kemper's statements about the crayons were the truth or lies and she promised to tell the truth. She also indicated that the sexual battery occurred "a little time ago," before Christmas, while it was "very cold" and the weather outside was like "snow."

Prior to the parties' arguments, the trial court explained:

So I look at all the issues. You look at things that are specifically in the rule. They don't help you a whole lot in terms of because they're pretty vague. Age and maturity of the child: The child at the time was apparently five years old, at that time of the alleged incident, four years old. Nature and duration of abuse: She says it was one time. Reliability of the assertion: well, that's sort of a circuitous factor. Reliability of the child victim: The same sort of thing.

I did have the opportunity to observe the child and also I could tell from the interview, it was made to somebody, not a family member here, not somebody that would have a reason to coach the child. And I didn't see any coaching going on by the interviewer, Ms. Kem-

per. It appeared that she did ask open-ended questions, a little bit of leading but not much. And the child's description was consistent with a child's description of an event like this. There's no suggestion that she was being coached and her language didn't suggest she was being coached by somebody else.

The reason I asked about prior statements and if she had told this to her mother and told it to her grandmother and told it to some other people, you know, after you tell it several times, you wonder whether they're telling what they told happened or whether they're telling what somebody told them happened over and over. That starts (inaudible), so. But apparently we don't have that situation.

Although there was some bit of, what do I want to call it, inaccurate, nondescript, general, vague type terms, and the problem you have with the state, of course you have a young witness, they're not going to be the best witness because they don't quite get the grasp, they're not as articulate, their cognitive abilities are not as good, but all things considered, she had no motivation to fabricate. And she was able to, I think, distinguish pretty much between reality and that.

She stumbled a little bit in the beginning about telling the truth as to whether the color of a crayon but by the time—she was asked a few times, she got it right and was able to do that and agreed to tell the truth. So whether she's mistaken or not would be up to the jury. My initial inclination is that it

should be admitted but I'm open to hear anything on the defense side.

Appellant argued that P.C. initially displayed an inability to recognize the duty to tell the truth and some of her answers did not make sense, but conceded there was no indication that P.C.'s mother put her up to making the allegation or asked her a lot of leading questions.* The trial court noted that P.C. gave a child-like description of the incident, it could not tell when the incident happened, and there was no indication that P.C.'s mother put her up to making the allegation. The trial court then ruled as follows:

Well, based on what I've already outlined, my initial ruling would be it's admissible but I'll leave it open if you come to me for other circumstances, because I think it's in the rule, that show it's untrustworthy. But given her demeanor, all the other circumstances I pointed to, the way the interview was done, I would find that it meets the requirements of subsection 23.

The CPT interview was admitted into evidence during trial, where P.C., then seven years old, and Appellant both testified. The jury found Appellant guilty, and he was sentenced to life imprisonment. This appeal followed.

### Analysis

■ A trial court's finding that a child's hearsay statements are reliable and come from a trustworthy source, making them admissible pursuant to section 90.803(23), Florida Statutes, is reviewed for an abuse of discretion. *Small v. State*, 179 So.3d

---

* While Appellant argued there was evidence of domestic violence and it should be considered, he conceded there was no evidence of the mother putting P.C. up to making the allegation against Appellant. For example, when the trial court inquired, "That's why I was looking, you know, did mama come and say, listen, you know ... you need to go do this or asked a lot of leading questions of the child. Do you have anything like that?," defense counsel replied, "No," and when he continued to argue the domestic dispute factor and the court said, "That's why I want to know ... is it something that mama put her up to. There's no indication from what I have so far," he responded, "Right."

421, 424 (Fla. 1st DCA 2015). This Court has explained:

> For a child hearsay statement to be admissible at trial, the court must hold a hearing outside the presence of the jury to determine if the statement meets two reliability conditions: "(1) the source of the information through which the statement was reported must indicate trustworthiness; and (2) the time, content, and circumstances of the statement must reflect that the statement provides sufficient safeguards of reliability." *State v. Townsend*, 635 So.2d 949, 954 (Fla.1994). Suggested factors for courts to consider in making this determination may be found in both statutory and case law. *See* § 90.803(23)(a)(1); *Townsend*, 635 So.2d at 957–58. Child hearsay statements are admissible when the trial court fulfills its responsibility to place on the record specific findings of fact that "the time, content, and circumstances of the statement provide sufficient safeguards of reliability." § 90.803(23)(a)(1)....

*Id.* (concluding that the child hearsay statements were properly admitted where the trial court analyzed the statements according to the factors suggested by section 90.803(23)(a)(1) and *Townsend* and made specific findings concerning the reliability of the statements that were supported by competent, substantial evidence; for example, the trial court made findings about the child's mental and physical age, noted that her descriptions of the acts were child-like, and found that her accusations were consistent).

In *State v. Townsend*, 635 So.2d 949, 954 (Fla.1994), the Florida Supreme Court explained that the two "strict trustworthiness and reliability requirements" were established "to balance the need for reliable out-of-court statements of child abuse victims against the confrontation and due process rights of those accused of child abuse," and noted that "the first require-ment was added to ensure a careful examination of the source, particularly when ... the circumstances involve marital discord between the child's parents and the possibility exists that one parent might be using the child to seek some advantage over the other parent."

Section 90.803(23)(a), Florida Statutes (2012), provides in pertinent part that "[u]nless the source of information or the method or circumstances by which the statement is reported indicates a lack of trustworthiness, an out-of-court statement made by a child victim" under the age of eleven concerning an act of child sexual abuse is admissible in evidence if:

> 1. The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. In making its determination, the court may consider the mental and physical age and maturity of the child, the nature and duration of the abuse or offense, the relationship of the child to the offender, the reliability of the assertion, the reliability of the child victim, and any other factor deemed appropriate;....

In addition to the factors suggested in section 90.803(23)(a)1., "[o]ther factors may include, but are not limited to":

> a consideration of the statement's spontaneity; whether the statement was made at the first available opportunity following the alleged incident; whether the statement was elicited in response to questions from adults; the mental state of the child when the abuse was reported; whether the statement consisted of a child-like description of the act; whether the child used terminology unexpected of a child of similar age; the motive or lack thereof to fabricate the statement; the ability of the child to distinguish between reality and fantasy;

the vagueness of the accusations; the possibility of any improper influence on the child by participants involved in a domestic dispute; and contradictions in the accusation. ... In sum, ... a court is to use a totality of the circumstances evaluation in determining reliability.

*Townsend,* 635 So.2d at 957–58. A trial court must make specific findings of fact on the record as to the basis of its ruling. § 90.803(23)(c), Fla. Stat.; *see also Townsend,* 635 So.2d at 957; *Rodriguez v. State,* 77 So.3d 649, 651 (Fla. 3d DCA 2011) (affirming the trial court's finding that the child's hearsay statements were reliable where the court complied with section 90.803(23) and *Townsend* "by making detailed findings of fact regarding the time, content, and other relevant circumstances in which the child-victim's hearsay statements were made, so as to establish reliability. Specifically, the trial court found: (1) the child provided a detailed account of the various assaults committed by the defendant upon her; (2) the child's reports to the various witnesses were consistent; (3) the questions posed to the child were open-ended, non-leading questions; (4) the child's answers were given using words consistent with a child her age; (5) there was nothing to indicate that the child-victim's hearsay statements, or the method by which those statements were obtained or reported, lacked trustworthiness; (6) the child had no reason to fabricate any of the accusations or details about the incident nor was there any evidence to suggest that she was coerced or coached; and (7) there was no evidence to indicate that this was an attempt to deal with a domestic dispute.").

█ Turning to the case before us, Appellant argues that the trial court erred by admitting the hearsay statements contained in the CPT video because they were unreliable given that P.C. could not understand the difference between truth and lies and provided several nonresponsive, non-

sensical answers. While P.C. initially provided incorrect answers about the color of the crayon and whether Kemper's statement about its color would be the truth or a lie, she was then able to correctly identify whether Kemper's statements were the truth or lies, she promised to tell the truth, she was only five years old at the time, and Kemper determined she appreciated the difference between truth and lies and her behavior with regard to the crayons was consistent with her age and was not unexpected. Although P.C. also provided several answers that seemingly were nonresponsive or did not make sense, she was only five years old at the time and Kemper testified such answers could be expected from a child her age.

The trial court complied with the requirements of the statute and case law for it held a hearing outside of the jury's presence to determine whether P.C.'s statements were reliable and made specific findings of fact as to the basis for its ruling. Specifically, the trial court made the following findings of fact: P.C. was four years old at the time of the alleged incident and five years old at the time of the disclosure, the abuse allegedly happened one time, the disclosure was made to someone who was not a family member and would have no reason to coach P.C., Kemper did not coach P.C. and mostly asked open-ended questions, P.C.'s description was consistent with a child's description of such an incident, there was no suggestion that P.C. was being coached and her language did not suggest otherwise, P.C. did not repeatedly recount the allegation to the point where its truthfulness would be questionable, P.C. had no motive to fabricate the allegation, P.C. was able to distinguish reality, P.C. eventually got the questions about the truth right and agreed to tell the truth, P.C. gave a child-like description of the incident, the court could not determine when the al-

leged incident happened, and there was no indication that P.C.'s mother put her up to making the allegation. Indeed, Kemper testified that P.C. appeared reliable, she had no reason to believe P.C. was lying or was coached, she did not notice any red flags, P.C.'s terminology in disclosing the sexual abuse was consistent with her age, and P.C.'s description of the abuse was fairly detailed and consistent with her age. Based on its findings, P.C.'s demeanor, and the way in which the interview was conducted, the trial court determined that the hearsay statements were admissible. As such, the record contradicts Appellant's assertion that the trial court was not specific enough in its findings of reliability.

▮ Contrary to the dissent's suggestion, the statute and case law did not require the trial court to explain the seemingly nonsensical and nonresponsive answers the five-year-old gave, which, Kemper testified, could be expected from a child her age, or how those responses factored into its ruling. The dissent cites *Salter v. State*, 500 So.2d 184, 185–86 (Fla. 1st DCA 1986), where this Court stated:

> Authorities indicate that in order to balance the need for reliable out-of-court statements of child abuse victims against the rights of the accused, the Legislature enacted this exception which will apply *only if a number of foundation requirements have been shown to exist.* Ehrhardt, *Florida Evidence*, § 803.23(a) (2d Ed.1984). Specifically, before the trial court may admit the statement of a child who testifies during the trial under this exception, *the trial court is required to* (1) hold a hearing outside the presence of the jury to determine that the circumstances surrounding the making of the statement demonstrate that the statement is reliable, and (2) *make specific findings of fact on the record setting forth the reasons why the trial*

*court determined that the statement was reliable and why the reasons indicating lack of reliability were discounted.* Finally, the prosecution is required to give the defendant notice of its intent to offer at trial a statement under this exception, such notice to include the contents of the child's statement, the time the statement was made, the circumstances surrounding the statement which indicates its reliability, and any other particulars "necessary to provide full disclosure of the statement." *Id.*

(Emphasis added.) *See also Weatherford v. State*, 561 So.2d 629, 633 (Fla. 1st DCA 1990) (finding that the trial court erred by not complying with section 90.803(23)(c)'s requirement "to make specific findings of fact on the record, setting forth the reasons the court determined the out-of-court statements to be reliable, and the reason it discounted any indications of a lack of reliability. *Griffin v. State*, 526 So.2d 752, 757 (Fla. 1st DCA 1988)").

However, as we subsequently explained: Section 90.803(23)(c), Florida Statutes, requires only that "the court shall make specific findings of fact, on the record, as to the basis for its ruling under this subsection." There is no statutory requirement that findings necessarily reflect a balance of indicia of *unreliability* with indicia of *reliability.* The appellant cites Ehrhardt, *Florida Evidence,* section 803.23(a) (2d ed. Supp.1989), to support his argument. Ehrhardt indicates that the statutory provision regarding findings on the record "*envisions* that the court will set forth the specific reasons that the court relied upon as well as why the reasons indicating a lack of reliability were discounted." Ehrhardt, *Florida Evidence* (2d ed. Supp.1989) (emphasis added). This portion of Ehrhardt is quoted in *Salter v. State*, 500 So.2d 184, 185 (Fla. 1st DCA

1986), and *Griffin v. State*, 526 So.2d 752 (Fla. 1st DCA 1988). It is noteworthy, however, that neither of these cases nor Ehrhardt's *Evidence* elaborates further. Although it may be useful in certain instances to have findings weighed in such a manner, we do not find it to be required by Florida law.

*Davis v. State*, 569 So.2d 1317, 1317–18 (Fla. 1st DCA 1990). In a footnote, the Court further explained:

> While *Griffin v. State*, 526 So.2d 752 (Fla. 1st DCA 1988), and *Weatherford v. State*, 561 So.2d 629 (Fla. 1st DCA 1990), also contain the language derived from Ehrhardt, there is no indication in either of these opinions, or in *Salter*, that the trial judge made case-specific factual findings which would sufficiently indicate reliability. Because there are sufficient case-specific findings in the instant case, the holdings in these cases do not address the issue presently before the court

*Id.* at 1318 n. 1. *Cf. Wade v. State*, 586 So.2d 1200, 1204 (Fla. 1st DCA 1991) ("In admitting the out-of-court statements of the child, the trial court's findings lacked sufficient detail to relieve the trial court of its obligation to address indicia of unreliability as well as indicia of reliability.") (Citing *Davis*). In fact, the statute and case law merely *suggest* factors trial courts may consider in making the requisite factual findings, *see* § 90.803(23)(a)1., Fla. Stat.; *Townsend*, 635 So.2d at 957–58; *Small*, 179 So.3d at 424, and in this case the trial court made sufficiently detailed case-specific factual findings.

## Conclusion

Accordingly, we conclude the trial court did not err in admitting the hearsay statements contained in the CPT video and, therefore, affirm Appellant's judgement and sentence.

AFFIRMED.

OSTERHAUS, J., specially concurs with opinion; WINSOR, J., dissents with opinion.

OSTERHAUS, J., specially concurring.

I agree with Judge Lewis's opinion, but acknowledge the dissent's point that it would have been better if the trial court's findings were more comprehensive. It's a close call.

First, I don't see a problem with how the court addressed the interview responses of the child victim that seemed nonsensical to adult ears. As a threshold matter, the victim testified clearly in both the pretrial interview and at trial that Appellant had violated her sexually. But she also gave some non-responsive and puzzling responses to questions during the investigative interview. These responses compelled the trial court, before ultimately admitting the interview as evidence, to give a reason for discounting certain "indications of lack of reliability" in her interview testimony—her young age. *See Weatherford v. State*, 561 So.2d 629 (Fla. 1st DCA 1990); *Salter v. State*, 500 So.2d 184 (Fla. 1st DCA 1986). The victim was only five at the time of the interview. And the trial court explained that young witnesses often don't quite grasp adult questions, they're not as articulate, and their cognitive abilities just simply aren't as good. With this explanation of less reliable aspects of her interview, as part of deciding that the statement was sufficiently trustworthy and reliable, the trial court satisfied what the statute and our precedents require for purposes of § 90.803(23), Florida Statutes. We do not expect seamless testimony from five year-olds. *See* § 90.803(23), Fla. Stat. ("In making its determination, the court may consider the mental and physical age and maturity of the child ... and any other factor deemed appropriate."); *Rodriguez v. State*, 77 So.3d 649, 651 (Fla. 3d DCA 2011) (de-

scribing that "the child's answers were given using words consistent with a child her age"); *Means v. State*, 814 So.2d 1136, 1137 (Fla. 1st DCA 2002) (recognizing that the child's testimony was ·"inconsistent with the exact details"). I disagree with the dissent that the trial court abused its discretion by not giving more reasons for discounting the victim's nonsensical responses. We have said that courts needn't, for example, specifically balance indicia of unreliability against indicia of reliability. *Davis v. State*, 569 So.2d 1317, 1317–18 (Fla. 1st DCA 1990). And although a more careful examination of the victim may be necessary "particularly when ... one parent might be using the child to seek an advantage over the other parent," the trial court found that this wasn't such a case. *State v. Townsend*, 635 So.2d 949, 954 (Fla.1994). Under these circumstances, I don't think the trial court abused its discretion by attributing some of the young victim's perplexing answers to her age and allowing her statement into evidence.

Second, I don't think the trial court's reliability analysis fails because it didn't establish a definitive time of the crime. The child didn't say exactly when the crime occurred, only that it happened "[a] little time ago." And the dissent demonstrates that she may not have reported the crime for seven months or more. But nailing down this date doesn't control the reliability question presented here. No statute or case, for instance, deems hearsay statements unfit for purposes of § 90.803(23) simply because the crime occurred months before. *See State v. Grego*, 648 So.2d 743, 747 (Fla. 2d DCA 1994) (reversing a decision to exclude statements made twenty months after the abuse). We certainly view closer contemporaneous statements to be more reliable. But the trial court considered the time—noting that the child was four when the incident occurred and five when she reported it—

together with the other indicia of reliability and unreliability before deciding that the hearsay statement possessed sufficient safeguards of reliability under the statutory standard. It was not an abuse of discretion to decide the issue this way.

Finally, it bears mentioning that after the trial court found the statement reliable for purposes of admission as evidence at trial, the defendant remained free to cross-examine the victim before the jury and vigorously attack the statement's reliability. *See Mikler v. State*, 829 So.2d 932, 934 (Fla. 4th DCA 2002) (explaining that "a safeguard" of reliability exists where a child testifies at trial and is available for cross-examination). And that is what happened here. My point is not that his trial remedied a § 90.803(23) evidentiary error (it didn't, and wouldn't even if there had been an error), but that a double protection exists in our system with respect to the reliability of this sort of evidence. The trial judge first held a hearing and found the hearsay evidence sufficiently reliable to come before the jury. Then later, the jury heard both the victim's hearsay and live testimony, witnessed her cross-examination, and had the benefit of the defendant's final argument highlighting the victim's puzzling and inconsistent responses, which provided a separate safeguard of reliability.

In sum, although the issue is a close one, I cannot conclude that the trial court abused its discretion by admitting the victim's statement into evidence.

WINSOR, J., dissenting.

"[I]t is essential that the trustworthiness and reliability requirements of section 90.803(23) be strictly followed." *State v. Townsend*, 635 So.2d 949, 957 (Fla.1994). Although the majority upholds the ruling below, it is unable to say that the trial judge ·strictly followed the· statutory re-

quirements. Because the trial court should not have allowed the hearsay evidence—and because there is no question about its prejudice—our obligation is to reverse and remand for a new trial.[1]

### I.

Bernardino Cabrera lived with his girlfriend and the three young sons they had together. The girlfriend's daughter lived with them too, and although Cabrera was not her biological father, he had raised her since birth and said he was the only dad she ever knew. According to Cabrera, he cared for the child, bathed her, disciplined her, and tried to teach her right from wrong. According to the State, he violated her with his finger or hand when she was just four years old.

Cabrera and the child both testified at trial. Without the child's hearsay statements and trial testimony, there was no evidence of any sexual abuse, so the case boiled down to who was more believable. That is a quintessential jury question, and like all jury questions, it must be resolved based strictly on admissible evidence. Here, the jury heard hearsay evidence that the law did not permit.

*The Child's Hearsay Statements*

The State presented expert testimony from an investigator who interviewed the child, along with a twenty-six-minute video of that interview. During the interview, the child (then five years old) offered incriminating statements about Cabrera (*e.g.*, "Q: Has anybody ever touched this part on your body? A: Only my daddy."). She indicated that the abuse occurred a single time while she and Cabrera were alone in her bedroom, while her mother was away at work. But the child could not say just when the act of abuse occurred. The closest she came was to say it was "before Christmas"—long before the July interview.

Beyond allegations of sex abuse, the interview also covered Cabrera's altercations with the girl's mother (*e.g.*, "Q: What were they screaming? A: Like to Mom—towards mommy. Q: What was Daddy screaming at Mommy? A: He just screams so loud.") and Cabrera's spanking the children (*e.g.*, "My daddy spanked my brothers and me, too. Q: Oh. He spanked your brothers and you, too? A: He don't, he don't spank babies."). The interview also included numerous incomprehensible or nonresponsive answers or statements, (*e.g.*, "Q: Well, what do you do with your bottom? A: Put a marker on it. Q: You put a mark on it? Well, what else do you use this part [your bottom] for? A: And a pencil.").

*The Child's Trial Testimony*

At trial, the child again incriminated Cabrera, testifying that he touched her between her legs. But some of her trial testimony contradicted her earlier hearsay statements. For example, she testified that her brother lay asleep in the room at the time—she and Cabrera were not alone. She also testified that her mother was home asleep when the incident occurred—not away at work. And her trial testimony differed from the interview statements as to whether Cabrera put his hand inside her; in her interview she said he did, but at trial she was unsure.

1. Beyond the child-hearsay issue, Cabrera raises several other appellate issues. He argues that the trial court should have permitted voir dire examination before allowing opinion testimony from the investigator who interviewed the child. He argues that the trial court wrongly allowed expert testimony on subjects in which the witness was not qualified as an expert. He argues that the trial court wrongly allowed expert testimony aimed at bolstering the child's credibility. And he argues that the trial court violated the Sixth Amendment by closing the courtroom during the child's testimony. Because the hearsay issue is dispositive, this opinion will not address these additional arguments.

*The Investigator's Testimony*

The investigator who conducted the interview also testified, detailing the videotaped interview, the child's statements, and her personal assessment of it all.[2] She testified that she never met the child before the twenty-six-minute interview and never saw her afterwards. At a pretrial hearing she said the child "appeared reliable," that the child exhibited avoidance behavior when asked certain questions (she got up and walked away to color, for example), and that there were no "red flags" indicating untruthfulness. She offered similar testimony at trial.[3]

## II.

### A.

In 1985, the Legislature enacted section 90.803(23), creating a hearsay exception for a child victim's *"trustworthy* and *reliable"* out-of-court statements describing sexual abuse. *Townsend,* 635 So.2d at 953. Central to the new statutory exception were its "strict trustworthiness and reliability requirements," which the Legislature recognized were necessary to preserve defendants' constitutional rights. *Id.* at 954 (citing *Weatherford v. State,* 561 So.2d 629 (Fla. 1st DCA 1990); *Salter v. State,* 500 So.2d 184 (Fla. 1st DCA 1986)); *see also id.* ("[T]he reliability requirements of this statute are essential in assuring the constitutionality of this exception.").

The statutory provision establishing the hearsay exception lays out its detailed procedural requirements. § 90.803(23), Fla. Stat. (2015). Before introducing child-hearsay evidence, the State must provide the defendant notice of its intent, complete with a description of the evidence, "the circumstances surrounding the statement which indicate its reliability, and such other particulars as necessary to provide full disclosure of the statement." *Id.* at (23)(b). The court must "find[ ] in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability." *Id.* at (23)(a)(1). And the court must "make specific findings of fact, on the record, as to the basis for its ruling." *Id.* at (23)(c). Finally, the exception applies only if the child testifies "or is judicially found to be unavailable as a witness." *Townsend,* 635 So.2d at 954; *see also* § 90.803(23)(a)(2), Fla. Stat. (2015).

In this case, the child testified at trial, the State provided notice of its intent to rely on the hearsay evidence, and the court conducted a separate hearing. That leaves Cabrera to argue only that the "time, content, and circumstances of the statement" did not "provide sufficient safeguards of reliability," § 90.803(23)(a), Fla. Stat. (2015)—or, more generally, that the hearsay statements were not admissible because they were not "clearly reliable," *Townsend,* 635 So.2d at 951.

---

**2.** Although the investigator testified that the child disclosed the sexual abuse "on her own" and "as an independent statement," the transcript of the videotape suggests otherwise. The investigator asked "Did Daddy ever do anything else?" Answer, "No." Later: Q: "Did [Cabrera] ever do anything to you you didn't like?" A: (nods head). Q: "What did he do to you that you didn't like?" A: "He spanked me a lot." Q: "Oh. He spanked you a lot?" A: "Uh-huh." Q: "Did he do anything else to you you didn't like?" A: "No." After the child said "no," the investigator immediately turned to questions about the child's body parts and touching.

**3.** The State's only other witnesses were (1) a detective who set up the child's interview after speaking with a DCF investigator and (2) the child's grandmother, whom the State offered to prove venue. Neither witness discussed any allegations of abuse. Cabrera's only other witness was a DCF investigator who interviewed the child two months after the interview at issue here. She testified that the child told her that no one had ever touched "her private area."

To determine whether hearsay statements are clearly reliable, the trial court must "examine the 'totality of the circumstances' surrounding the making of the statement 'that render the declarant particularly worthy of belief.'" *Conner v. State,* 748 So.2d 950, 957 (Fla.1999) (quoting *Idaho v. Wright,* 497 U.S. 805, 819, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)). The statute "envisions that [trial courts] will set forth the specific reasons that [they] relied upon and not merely recite the statutory requirements relating to reliability." *Feller v. State,* 637 So.2d 911, 915 (Fla. 1994). We review the trial court's reliability determination and the sufficiency of its factual findings only for an abuse of discretion. *Elghomari v. State,* 66 So.3d 416, 418–19 (Fla. 4th DCA 2011).

### B.

During the hearing below, the court took a short break so that the judge could watch the video. The judge then returned and heard testimony from the hearing's only witness, the investigator who conducted the interview. The investigator's testimony was largely consistent with her subsequent trial testimony, and it included her opinion that the child's hearsay statements were reliable.

After counsel for the State and Cabrera questioned the investigator, the trial court asked her whether she knew if the child made any similar statements to other people. The investigator said she "was told [the child] had disclosed these incidents to the child protective investigator," but that she knew of no others. The court then asked whether the child's statement to that investigator was consistent with what the child told her, and the investigator said she did not know. Still interested in "any other people to whom the child made a statement about this other than this person right here," the judge said he was "curious because one of the things I would look at is how many times to how many

people." The judge surmised "obviously somebody got involved because of a call into the hotline. And then, you know, the information may be, well, the child told the aunt. The child told a school person. How did it get to their attention[?] Who[m] did she tell and under what circumstances"? The prosecutor responded that she thought it was the grandmother; the defense thought so too. The court pressed further: "do we know, in other words, did the child talk to the grandmother? How did the grandmother know or suspect that something happened?" The prosecutor said she was still looking and wanted to "make sure before I speak out of turn," but the court ended the inquiry, saying "[w]ell, let's not worry about it if it's going to take us too long."

That portion of the hearing ended with the prosecutor telling the court "I'm pretty confident that the child told the grandmother, who called the hotline," and the court responding, "Okay. But we don't know what the substance of that statement was by the child."

### C.

The court then turned to its ruling, which it delivered orally. (The majority opinion quotes the order in its entirety.) Before either party's argument, the court offered a preliminary ruling, along with criticisms of the statutory factors that should have guided it:

> So I look at all the issues. You look at things that are specifically in the rule. They don't help you a whole lot in terms of—because they're pretty vague. Age and maturity of the child: The child at the time was apparently five years old, at that time of the alleged incident, four years old. Nature and duration of abuse: She says it was one time. Reliability of the assertion: Well, that's sort

of a circuitous factor. Reliability of the child victim: The same sort of thing.

. . . .

Although there was some bit of, what do I want to call it, inaccurate, nondescript, general, vague type terms, and the problem you have with the State, of course you have a young witness. . . . My initial inclination is that it should be admitted but I'm open to hear anything on the defense side.

The court then heard from Cabrera's counsel, who argued that the court should disallow the hearsay evidence because it was unreliable. Cabrera's counsel argued that some of the child's statements made no sense. He also argued that the court should consider evidence of domestic abuse, which could support a finding regarding the child's motivations. The court then continued its ruling:

Well, based on what I've already outlined, my initial ruling would be it's admissible but I'll leave it open if you come to me for other circumstances, because I think it's in the rule, that show it's untrustworthy. But given her demeanor, all the other circumstances I pointed to, the way the interview was done, I would find that it meets the requirements of subsection 23.

This was error. Considering the totality of the circumstances as well as the specific statutory requirements, the trial court's findings were not sufficient to support a conclusion that the "time, content, and circumstances of the statement provide sufficient safeguards of reliability." § 90.803(23)(a)(1), Fla. Stat. (2015).

## III.

### A.

First among the "time, content, and circumstances of the statement" is time. It is generally accepted that close temporal proximity between a hearsay statement and the event it describes can be an indication of reliability. Indeed, the premise underlying the "excited utterance" exception "is that such statements are given under circumstances that eliminate the possibility of fabrication, coaching, or confabulation, and that therefore the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy and that cross-examination would be superfluous." *Wright*, 497 U.S. at 820, 110 S.Ct. 3139; *cf. also Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) ("Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness."), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).[4] Numerous firmly rooted hearsay exceptions rely on timing as an indication of reliability. *See, e.g.*, § 90.803(1), Fla. Stat. (2016) ("A spontaneous statement describing or explaining an event or condition made *while the declarant was perceiving the event or condition, or immediately thereafter* . . . .") (emphasis added); *id.* at (3) ("Then-existing mental, emotional, or physical condition."); *id.* at (6) (records of regularly conducted business activity "made *at or near the time* by, or from information transmitted by, a person with knowledge") (emphasis added).

---

**4.** The Florida statutory provision on excited utterances creates a hearsay exception for a "statement or excited utterance relating to a startling event or condition *made while the declarant was under the stress of excitement* *caused by the event or condition.*" § 90.803(2), Fla. Stat. (2016) (emphasis added). It applies only to statements "made before there was time to contrive or misrepresent." *State v. Jano*, 524 So.2d 660, 661 (Fla.1988).

Given the general relationship between timing and reliability, it is not surprising that with the child-sex-abuse hearsay exception specifically, "[t]he time of the out of court statements, relative to the time of the incident . . . [is] critical to a determination of reliability." *Jaggers v. State*, 536 So.2d 321, 324 (Fla. 2d DCA 1988), *disapproved on other grounds by Pantoja v. State*, 59 So.3d 1092 (Fla.2011). In allowing hearsay evidence under this exception, courts routinely cite the close proximity between the child's statements and the charged abuse. *See, e.g., Perez v. State*, 536 So.2d 206, 211 (Fla.1988) (affirming order that included finding that the statement came "either four days after or the evening after it happened, which is fairly recent"); *Mikler v. State*, 829 So.2d 932, 935 (Fla. 4th DCA 2002) (affirming order that included finding that the "statement was made on the same day of the incident"); *Griffin v. State*, 526 So.2d 752, 757 (Fla. 1st DCA 1988) ("In *Distefano*, . . . the record demonstrated that the child reported the touching incident to her mother at the first available opportunity, while the child was still emotionally affected by the occurrence."); *cf. also id.* at 757–58 ("The record reflects that the statements attributed to the child were not made spontaneously, and were not made at the first available opportunity after the occurrence of the alleged incident. Rather, the statements were elicited by questions from adults. . . .").

In this case, though, the trial court made no meaningful finding regarding the timing. The date of the videotaped interview (July 18, 2013) was not disputed, but the date of the charged abuse remains unknown. The child indicated in the interview that the abuse happened only once, but she could not say when. She vaguely offered that the incident "was a little time ago" but then unambiguously said that the incident was before Christmas. So although the special concurrence says she "may not" have made her declaration "for seven months or so" after the event, we can be assured (if we accept her statement as attended by "sufficient safeguards of reliability") that at the very least it was nearly seven months.[5] The point is not

5. The investigator earnestly tried to determine the timing, but with no success:

Investigator: "[Y]ou were talking about when Daddy touched you here . . . [W]hen did that happen?"
Child: "I don't know."
Investigator: "You don't know? Was it a long time ago or a short time ago?"
Child: "It was a little time ago."
Investigator: "A little time ago? Do you remember if it was hot or cold outside?"
Child: "Just cold. It was very cold."
Investigator: "It was very cold?
Child: "And I went back inside."
Investigator: "And you went back inside? Was it cold outside or just cold in the house?"
Child: "House."
Investigator: "In the house? What was the weather like outside?"
Child: "Snow."
Investigator: "Snow? So when this happened, were you here in Tallahassee or in a different place?"

Child: "I live in a different place with my grandma."
Investigator: "Well, when Daddy was touching you on that, that part, where were you living then?"
Child: "I was living at my grandmother's. My grandma stayed at a blue house."
Investigator: "She stayed at a blue house."
Child: "And now we moved with my grandma."
Investigator: "Do you remember did you have lice when that happened?"
Child: "No."
Investigator: "No. When Daddy touched you, did you have lice?
Child: (Shakes head.)
Investigator: "No? Okay. Do you remember if you were in school or out of school?"
Child: "In school."
Investigator: "You were in school. Do you remember if it was before or after Christmas?"
Child: "I was, I was in a Jeep—no. I know that wasn't Christmas day."

that the trial court did not establish the precise date of the alleged abuse; it is that the court did nothing to address the undisputed fact that many months passed between that time (whenever it was) and the time of the child's statement. In fact, the only thing the court even noted about timing was that "[t]he child at the time was apparently five years old, at that time of the alleged incident, four years old." This is hardly sufficient to sustain a conclusion that the "time ... of the statement provide[s] sufficient safeguards of reliability," § 90.803(23)(a)(1), Fla. Stat. (2015).[6]

### B.

Unlike the timing, about which the trial court made no real findings and gave no apparent consideration, the trial court did offer at least limited findings on the statements' content. The trial court noted, for example, that "the child's description was consistent with a child's description of an event like this," but it did not say why. This boilerplate suggestion does not provide the level of specificity the statute anticipated. *See Feller*, 637 So.2d at 915 ("Section 90.803(23)(c) envisions that the court will set forth the specific reasons that it relied upon and not merely recite the statutory requirements relating to reliability. In the instant case, the court did not indicate what circumstances it relied upon ...." (citation omitted)).

The more troubling aspect of the trial court's evaluation of the content is the trial court's treatment (or nontreatment) of portions of the interview that indicated *unreliability*—portions that made no sense or were completely unresponsive. The trial court made no effort to explain how these portions and their implications fit into its decision. The court seemed to acknowledge these issues, initially noting that "[a]lthough there was some bit of, what do I want to call it, *inaccurate*, nondescript, general, vague type terms," but continuing (without finishing that thought): "the problem you have with the State, of course

Investigator: "Oh, okay. When Daddy was touching you, do you remember was that before or after Christmas?"
Child: "Not after Christmas."
Investigator: "Not after Christmas. So it was before Christmas?"
Child: "Yeah."
Investigator: "Okay. And you said it was cold outside?"
Child: "Yeah."
Investigator: "And you said that you were in school?"
Child: (Nods head.)
Investigator: "Okay. And do you remember if it was a long time ago or a short time ago?"
Child: "A little time ago."
Investigator: "A little time ago. Do you remember the name of the month when it happened?"
Child: "I know my Mom's name is [name]."
Investigator: "Oh. Your mom's name. Do you know your months? Do you know the months, January, February, March?"
Child: "I'm going to spell my name."

Investigator: "Oh, you're going to spell your name?
Child: "It's with P."
Investigator: "That's right. Your name starts with a P."

6. The special concurrence accurately notes that no statute or decision "deems hearsay statements unfit for purposes of § 90.803(23) simply because the crime occurred months before." Fair enough, but the statute does require that the timing of the statement show its reliability, and that has to mean something. The special concurrence notes one case that involved a twenty-month delay— *State v. Grego*, 648 So.2d 743 (Fla. 2d DCA 1994)—but quite unlike this case, the court in *Grego* articulated specific, detailed reasons why the statement could be deemed reliable notwithstanding the delay. After detailing reasons for the delay, the court held that under the "extremely unusual circumstances" at issue, the delay did not preclude the exception's application. *Id.* at 747. If there are similar circumstances justifying the delay here, neither the trial court nor this court has identified them.

you have a young witness, they're not going to be the best witness because they don't quite get the grasp, they're not as articulate, their cognitive abilities are not as good, but all things considered, she had no motivation to fabricate." In other words, the fact that the child's statements included inaccuracies was a factor for the *State* to consider in deciding whether to introduce the statement—not a factor for the court to consider in deciding whether to allow the statement to be introduced. This is not the law.

A finding that a statement is reliable and trustworthy does not require a finding that everything in the statement is true and accurate. It does require, though, that the trial court address any glaring or obvious inaccuracies and how in light of those (or despite those) the court concludes the statement overall is reliable and trustworthy. The court must make specific findings "setting forth the reasons the court determined the out-of-court statements to be reliable, *and the reason it discounted any indications of a lack of reliability.*" *Weatherford,* 561 So.2d at 633 (emphasis added); *accord Salter,* 500 So.2d at 185 (same). Here, the trial court acknowledged some inaccuracies generally, but it did not specifically address them or explain how the court's ultimate conclusion was justified in light of them.[7]

As one example, the child said "Snow" when asked what the weather was like outside. This followed the investigator's efforts to determine when the abuse occurred. The investigator asked whether "it was hot or cold outside," presumably to determine the season. The child responded "[j]ust cold. It was very cold.... And I went back inside." (It is unclear why she offered "I went back inside" or what outside occurrence was on her mind.) The investigator next asked "Was it cold outside or just cold in the house?" The child answered "House." The investigator then asked what the outside weather was, and the child said "Snow." Understandably, the investigator's next question was whether the abuse was somewhere outside of north Florida: "Snow? So when this happened, were you here in Tallahassee or in a different place?" But that was the end of that.

The charging document alleged the abuse occurred in Leon County. The trial court's order never addressed the child's statement regarding snow, whether it actually snowed in Tallahassee during the relevant timeframe, or how any of this fit into its decision allowing the evidence. At oral argument, the State offered several explanations for the statement about snow—that the child perhaps saw snow on television, that she mistook a frosty morning for snow on the ground, or that a child's idea of snow might differ from an adult's. Perhaps. But none of those potential answers was part of the trial court's order, and the State's supposition cannot substitute for court findings.

In addition to the "snow" comment, the interview's content included other indicia of unreliability that the trial court did not address. For example, the investigator showed the child a drawing of a child and asked what "we call this part in between

---

7. The majority relies on *Davis v. State,* 569 So.2d 1317 (Fla. 1st DCA 1990), to say the trial court was not required to address the child's "seemingly nonsensical and nonresponsive answers." The *Davis* decision was critical of *Salter* (it found it "noteworthy" that *Salter* did not "elaborate[ ] further," 569 So.2d at 1318), but our prior-panel-precedent rule does not allow a subsequent panel to overrule an earlier one. To the extent *Davis* and *Salter* conflict, we must follow the earlier decision. *See, e.g., Adams v. State,* 188 So.3d 849, 851 (Fla. 1st DCA 2012). At any rate, even if the trial court had no obligation to explain away the statements indicating lack of reliability, its order would nonetheless constitute an abuse of discretion for the other reasons this opinion details.

the legs." The child said she called it a "[b]ottom." When asked what it is called on a girl, she said a "lake." The investigator testified that children frequently refer to female genitalia as the "bottom." But as to the term "lake," the investigator said only that children call private areas all sorts of things. The trial court did not address this at all.

Nor did the trial court address other statements or answers that presented issues of reliability. Statements and answers like:

- "[W]hen I eat breakfast, that means I need to go to bed."
- Q: "[W]hat do you do with your bottom?"
  A: "Put a marker on it."
- Q: "So did Daddy say anything to you when that happened?"
  A: "No. Only my Mommy."
  Q: "What did Mommy say?"
  A: "She said, I can't use the marker."
- Q: "When's the last time you saw Daddy?"
  A: "I never saw Daddy before."
- Q: "You never saw Daddy before?"
  A: "I was asleep. She woke me up."
- Q: "Do you remember the name of the month when it happened?"
  A: "I know my Mom's name . . . ."

None of these statements or answers—either alone or together—compels a finding of unreliability or untrustworthiness. We never expect flawless statements from any witness. And we cannot hold young children to the same standards as adults, particularly young children alleged to have suffered appalling abuse. But the statutory exception requires trial courts to explain why indicators of unreliability can be overcome—why the court is assured of reliability notwithstanding statements that call it into question. See *Salter*, 500 So.2d at

185; *Wade v. State*, 586 So.2d 1200, 1204 (Fla. 1st DCA 1991).

The special concurrence suggests that the court did address these indicia of unreliability: by noting the child's youth. But the child was the same age when she said it was snowing outside, when she said Cabrera hurt her, and when she said everything else. If her youth is a reason to discount statements known to be untrue, then it should have at the least raised concerns about the truth of her other statements—concerns that the trial court should have addressed.

### C.

Turning to the last component of "time, content, and circumstances," the trial court concluded that the circumstances surrounding the interview supported a finding of reliability. The court first looked to earlier statements the child might have made, explaining that:

> The reason I asked about prior statements and if she had told this to her mother and told it to her grandmother and told it to some other people, you know, after you tell it several times, you wonder whether they're telling what they told happened or whether they're telling what somebody told them happened over and over.

But then, rather than follow up on this inquiry when the State offered to marshal more information, the court said "let's not worry about it if it's going to take us too long." The court asked the right question; it just did not wait for the answer. It therefore had no basis for its conclusion that "apparently we don't have that situation."

Also related to circumstances surrounding the interview, the trial court concluded—again without explanation—that "all things considered, [the child] had no motivation to fabricate." In some instances, other problems in the child's home supply

indicia of reliability or unreliability. *Compare Thomas v. State*, 760 So.2d 1138, 1141 (Fla. 5th DCA 2000) ("Another factor against reliability is the possibility of improper influence on C.T. by his mother in this domestic dispute."), *with Rodriguez v. State*, 77 So.3d 649 (Fla. 3d DCA 2011) (finding no evidence to indicate child's hearsay statement related to domestic dispute). Here, there was significant evidence of familial discord, which the trial court's order ignored altogether. The investigator knew of allegations of domestic violence, and the child told her that Cabrera had been arrested for hitting her mother. The child told the investigator that Cabrera hits the mother and that the mother hates Cabrera. And at trial, the State offered still more in terms of problems at the child's home, explaining that the child was in foster care and not with her mother or grandmother. These facts undermine the trial court's summary conclusion that the child had no motive to fabricate.[8] Regardless, the trial court's failure to explain its findings limits our review and constitutes an abuse of discretion.

## IV.

There are no bright lines between orders that satisfy section 90.803(23)'s strict requirements and those that do not. Courts have upheld orders with comprehensive and detailed findings, *see, e.g., Rodriguez*, 77 So.3d at 651; *Elghomari*, 66 So.3d at 419–20; *Reynolds v. State*, 660 So.2d 778, 779–80 (Fla. 4th DCA 1995), and they have rejected those with only boilerplate findings or no findings at all, *see, e.g., Feller*, 637 So.2d at 915–16; *G.H. v. State*, 896 So.2d 833, 835 (Fla. 1st DCA 2005). This case falls somewhere in between. Any one of the defects identified above considered alone—or even some combination of them considered together—might have allowed the trial court's ultimate conclusion. The abuse of discretion standard, after all, is a forgiving one. But looking to the totality of the circumstances and considering all of the problems with this order, as we must, our obligation is to reverse.

One final note: It is not our role to determine whether the child was being truthful in that interview, and nothing in this opinion should be read as a criticism of her statements. It takes a lot of courage for a five-year-old girl to talk openly with an investigator about sex abuse allegations, perhaps more courage still for a seven-year-old to testify in a jury trial. But "[u]nfortunately, not every statement by a child that he or she has been abused is reliable, and the Florida Legislature has recognized the vital interests that must be balanced in child abuse prosecutions." *State v. Jones*, 625 So.2d 821, 823 (Fla. 1993). Ultimately, it is up to the jury to weigh the credibility of this child's hearsay statements, but only after the trial court has strictly complied with the statute. *Cf. Garcia v. State*, 659 So.2d 388, 392 (Fla. 2d DCA 1995).[9] The court did not do that

---

8. The majority states that Cabrera "conceded there was no indication that [the child's] mother put her up to making the allegation," Op. at 4, but Cabrera's counsel told the court that "there is evidence that there's domestic abuse and [Cabrera] abused her. One would be left to draw an inference as to, you know, how the mother felt and what, if anything, she said to the child."

9. The special concurrence closes by noting that Cabrera remained free to argue to the

jury that the child's hearsay statement was not credible. The purpose of the statute, though, is to keep from the jury hearsay statements that are not assured of reliability. If it were enough to say defendants could argue reliability to the jury, there would be no purpose in excluding hearsay in the first place, no purpose in a statutory requirement for a hearing outside of the jury's presence, and no purpose in requiring strict compliance. *Cf. Platt v. State*, 201 So.3d 775, 778, 41 Fla. L. Weekly D2234a, D2235, 2016 WL 5404193, at

here, so Bernardino Cabrera deserves a new trial.

\*3 (Fla. 4th DCA Sept. 28, 2016) (reversing admission under 90.803(23) and noting that child's live testimony did not cure error: "If it did, there would be no reason for section 90.803(23) to require findings...."). But the

Florida Supreme Court has never taken that approach, instead insisting that "the trustworthiness and reliability requirements of section 90.803(23) be strictly followed." *Townsend,* 635 So.2d at 957.