DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

MICHAEL TROY OLIVER,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2022-1085

_____

July 31, 2024

Appeal from the Circuit Court for Pasco County; Mary M. Handsel,
Judge.

Luke Charles Lirot of Luke Charles Lirot, P.A., Clearwater, for Appellant.

Ashley Moody, Attorney General, Tallahassee; Krystle Celine Cacci,
Assistant Attorney General, Tampa; and Blain Goff, Assistant Attorney
General, Tampa, for Appellee.


SMITH, Judge.

Appellant Michael Troy Oliver challenges his judgment and
sentences arguing that his due process rights were violated when the
trial court admitted child hearsay statements made during unrecorded
interviews by law enforcement based upon a standard policy of the Pasco
County Sheriff's Office (PCSO), which prohibited the recording of child

sexual abuse victims.[1]  Because the trial court made findings sufficient to establish that the source of the hearsay statements was trustworthy and that the circumstances of the statements provided the necessary safeguards of reliability, Mr. Oliver cannot establish that the failure of the law enforcement officers and the child protection specialist to record the interviews, following a policy of PCSO, amounted to a fundamental denial of due process.  Therefore, Mr. Oliver has not established reversible error, and we affirm his judgment and sentences.

The State charged Mr. Oliver by amended information with two counts of sexual battery (defendant over the age of eighteen and victim under the age of twelve) and one count of lewd or lascivious molestation (defendant over the age of eighteen and victim under the age of twelve).

The victim, Mr. Oliver's stepdaughter, testified that after Mr. Oliver and her mother divorced, Mr. Oliver molested her during visitations at his house over a period of approximately three years.  According to a police report, the victim first reported the molestation to her mother about two years after the abuse ended.  The officer stated in the report that the victim's mother found pornography on the victim's phone and that the victim cried when her mother confronted her; when asked why she was crying, the victim ultimately stated that Mr. Oliver had "touched her privates."

Prior to trial, the State filed a notice of intent to use child hearsay pursuant to section 90.803(23), Florida Statutes (2019), stating that it intended to prove the molestation and sexual battery, in part, through the testimony of the victim's mother; PCSO Deputy David Schaub, who conducted a preliminary interview of the victim on January 7, 2016;

_____

[1] Mr. Oliver raises several other issues in this appeal in which we find no merit and do not address further.

2

Detective Wayne Boekeloo, who interviewed the victim on January 15, 2016; and Jessica Herzek, the child protection specialist who interviewed the victim on January 25, 2016. Mr. Oliver filed a motion in limine to exclude, among other things, all statements made by the victim, including those to Detective Boekeloo and Ms. Herzek, arguing that the statements were hearsay not covered by any exception.

At a hearing on the child hearsay motion, the State argued that the victim's statements to the officers were admissible under the guidelines described by the supreme court in *State v. Townsend*, 635 So. 2d 949 (Fla. 1994), maintaining that the victim's report of the incident remained consistent with her statements to her mother, the officers, and to the child protection specialist, which the State argued indicated truthfulness. Mr. Oliver argued that the timing of the report of abuse by the victim to her mother, two years after the abuse allegedly ended and almost immediately after the mother found pornography on the victim's phone, indicated untrustworthiness, as the victim could be seen as attempting to divert her mother's attention. He noted that *Townsend*, 635 So. 2d at 957, required the trial court to first determine whether the hearsay statement was from a trustworthy source and argued that the timing of the victim's reporting of the incident called the trustworthiness into question. Mr. Oliver also argued that the victim's statements had grown more detailed through interviews with the officers and Ms. Herzek.

In its order on the child hearsay motion, the trial court detailed the victim's descriptions of abuse, noting that the abuse occurred when the victim was between eight and eleven years old and that the victim was now fifteen. The court found that the victim was a "mature child who did not appear to have any problem answering questions from both sides" and that her testimony was reliable and admissible. The court ruled that

Ms. Herzek's interview was conducted using open-ended, nonleading questions, that the child had volunteered information not previously disclosed during the interviews with the officers and had used age-appropriate language, and that there was "no evidence that the child's statements were in any way contaminated." The court found that the victim's statements to Ms. Herzek were reliable.

The court similarly detailed the victim's description of abuse to Deputy Schaub and found that Deputy Schaub had asked only open-ended questions and that the victim's testimony "was consistent and did not appear to be coached in any way" and was therefore admissible. The court found that Detective Boekeloo's testimony was largely duplicative of Ms. Herzek's and excluded his hearsay testimony to that extent. The court noted that the victim's testimony varied slightly in her interviews with Deputy Schaub, Detective Boekeloo, and Ms. Herzek but found that these inconsistencies were "minor at best and could come from the form of the question more than the answer given by the victim" and that inconsistent statements could still be reliable where the safeguards of reliability were present. The court ultimately ruled that the State "met its burden in establishing the reliability of the child hearsay" and that it was admissible at trial.

At trial, the victim testified that after Mr. Oliver and her mother divorced, Mr. Oliver had engaged in sexual acts with her during visitations beginning when she was seven or eight years old. She testified that when she eventually reported the abuse to her mother, her mother called the police. The victim stated that she was interviewed by Deputy Schaub, Detective Boekeloo, and Ms. Herzek. She was asked open-ended questions, and no one suggested any answers "one way or

4

another." The victim could not recall whether any of the interviews were recorded.

At trial, Deputy Schaub, Detective Boekeloo, and Ms. Herzek testified consistently with their testimony at the hearing on the child hearsay motion. On cross-examination, Mr. Oliver sought to establish that the PCSO's policy against recording child sexual abuse victims was a violation of due process—depriving him of the opportunity to cross-examine his accuser. Deputy Schaub testified that he was wearing a body camera on the day of the interview but turned it off before he started his questioning, explaining that doing so was "agency policy." In this regard, Detective Boekeloo testified at trial that when he conducted his interview, he was in street clothes and was not wearing a body camera and that while he had a cell phone he did not record his interview with the victim because it was against PCSO policy to audio or video record juvenile sex victims. Detective Boekeloo testified that his training included a course on sexual assault investigations and that part of that training dealt with conducting interviews. He testified that the course did not mention the importance of recording interviews. He also testified that the closed-circuit video of Ms. Herzek's interview with the victim also was not recorded per agency policy, even though PCSO was able to do so. Ms. Herzek testified that she interviewed the victim and did not record the interview because not doing so was standard operating procedure when working with PCSO. She testified that the interviews she conducts in Citrus County are recorded. After refreshing her memory with her deposition testimony, in which she stated that her training indicated that recording child interviews was best practice, she testified that she did not know why recording the interviews in Pasco County would not also be the best practice.

5

The jury found Mr. Oliver guilty on all three counts, and the court sentenced him to three life sentences. Mr. Oliver filed a motion for new trial, which the trial court denied.

Mr. Oliver argues that his due process rights were violated when the trial court admitted the child hearsay testimony from the unrecorded interviews with the officers and the child protection specialist.

We review the admission of child hearsay for an abuse of discretion. *Smith v. State*, 333 So. 3d 255, 261 (Fla. 1st DCA 2022) (citing *Barton v. State*, 704 So. 2d 569, 575 (Fla. 1st DCA 1997)).

An exception to the hearsay rule exists when a sexual abuse victim aged sixteen or younger testifies and when "the source of information or the method or circumstances by which the statement is reported" is trustworthy and the "time, content, and circumstances of the statement provide sufficient safeguards of reliability." § 90.803(23)(a)1, 2.a; *Townsend*, 635 So. 2d at 954.

> In making its determination [on whether the safeguards of reliability were present], the court may consider the mental and physical age and maturity of the child, the nature and duration of the abuse or offense, the relationship of the child to the offender, the reliability of the assertion, the reliability of the child victim, and any other factor deemed appropriate.

§ 90.803(23)(a)1. The "other factor[s]" may include

> a consideration of the statement's spontaneity; whether the statement was made at the first available opportunity following the alleged incident; whether the statement was elicited in response to questions from adults; the mental state of the child when the abuse was reported; whether the statement consisted of a child-like description of the act; whether the child used terminology unexpected of a child of similar age; the motive or lack thereof to fabricate the statement; the ability of the child to distinguish between reality and fantasy; the vagueness of the accusations; the possibility of any improper influence on the child by

6

participants involved in a domestic dispute; and contradictions in the accusation.

*Townsend*, 635 So. 2d at 957-58 (first citing *Idaho v. Wright*, 497 U.S. 805 (1990); then citing *Perez v. State*, 536 So. 2d 206 (Fla. 1988); then citing *State v. Romanez*, 543 So. 2d 323 (Fla. 3d DCA 1989); and then citing *Griffin v. State*, 526 So. 2d 752 (Fla. 1st DCA 1988)). Additional relevant factors in this determination can include whether "the questions posed to the child were open-ended, non-leading questions," whether "the child provided a detailed account of the various assaults committed by the defendant upon her," and whether there is "any evidence to suggest that she was coerced or coached." *Rodriguez v. State*, 77 So. 3d 649, 651 (Fla. 3d DCA 2011); *see also Cabrera v. State*, 206 So. 3d 768, 772 (Fla. 1st DCA 2016).

In the present case, the trial court made findings based on the victim's age, the nature and duration of the abuse, and the victim's relationship to Mr. Oliver. It further found that the officers and the child protection specialist who interviewed the victim had asked nonleading and open-ended questions and that no evidence indicated that the victim's responses were coached. It also found that the victim gave a detailed accounting of the abuse and that any inconsistencies in the descriptions between the three interviews could be explained by the differences in questions posed by the different interviewers. Based on these findings, the court determined that the victim's hearsay statements were reliable and thus admissible.

While testimony at trial indicated that recording interviews with child sexual abuse victims is best practice, the court did not find that the evidence in this case—which consisted of no recordings—suggested any lack of trustworthiness in the circumstances of the interviews.

7

Mr. Oliver cites to no authority indicating that a failure to record an interview with a child sexual abuse victim renders that interview unreliable per se. Instead, he points to Florida Rule of Criminal Procedure 3.220(h)(4), requiring <u>depositions</u> of children to be videotaped, and to the committee notes to the 1989 amendment to that rule, explaining that "[t]he videotaping of the deposition will enable the trial judge to control [intimidation] tactics" and that the requirement should "protect witnesses of fragile emotional strength because of their vulnerability to intimidation tactics." We reject Mr. Oliver's contention that we should extend the mandate in the rules of criminal procedure regarding depositions to also include interviews of child sexual abuse victims by law enforcement or child protection investigators or specialists. It is not our role to rewrite section 90.803(23) and impose a requirement that the Florida Legislature did not see fit to require. *See, e.g., Chalifoux v. Sanchez*, 991 So. 2d 432, 433 (Fla. 1st DCA 2008) ("The courts should not write into clear and unambiguous legislation what the legislature chose not to include.").

Next, Mr. Oliver equates the PCSO policy to not record the interviews to the destruction of evidence and failure to preserve evidence, citing *State v. Hills*, 467 So. 2d 845 (Fla. 1st DCA 1985), and *State v. Bennett*, 111 So. 3d 943 (Fla. 2d DCA 2013). But those cases dealt with the State's destruction of or failure to preserve existing evidence, not a failure to create evidence. And regardless of this distinction, the court in *Bennett* stated that the State only has a duty to preserve "materially exculpatory evidence." 111 So. 3d at 944 (quoting *California v. Trombetta*, 467 U.S. 479, 488 (1984)). The *Bennett* court noted that the altercation between Mr. Bennett and another person depicted in the deleted video had been observed by at least three other people and held

8

that therefore "the unavailable video did not rise to the level of constitutionally material evidence" because "the defense can obtain evidence comparable to the video in the form of the eyewitnesses' testimony." *Id.* at 945 (citing *Trombetta*, 467 U.S. at 489).

In this case, both the interviewers and the victim testified at trial regarding how the unrecorded interviews were conducted. The nonexistent video of these interviews therefore was not "constitutionally material," and even presuming the failure to record the interviews constituted a destruction of evidence, Mr. Oliver "must establish that law enforcement acted in bad faith in order to prove a violation of his due process rights." *Id.* (citing *Arizona v. Youngblood*, 448 U.S. 51, 56-58 (1988)); *see also, e.g., Youngblood*, 488 U.S. at 58 ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."); *Kelley v. State*, 569 So. 2d 754, 756 (Fla. 1990) (holding that the State did not deny the defendant due process where "[t]he state was not at fault in the destruction of the evidence" and the destruction of evidence was not prejudicial to the defendant's case); *State v. Miller*, 159 So. 3d 992, 994 (Fla. 5th DCA 2015) ("The loss or destruction of evidence that is potentially useful to the defense violates due process only if the defendant can show bad faith on the part of law enforcement." (citing *Youngblood*, 488 U.S. at 58)); *State v. Larrinaga*, 569 So. 2d 911, 913 (Fla. 5th DCA 1990) (holding that the State's destruction of videotapes of interviews with child abuse victims was not unduly prejudicial to defendant where the State erased the videotaped statements in good faith and the children were prepared to testify). Mr. Oliver points to no evidence in the record suggesting that the officers or the child protection

9

specialist acted in bad faith by failing to record the interviews of the victim when they acted pursuant to PCSO policy.

At trial, Mr. Oliver challenged the credibility of the officers and the child protection specialist, and the jury was free to weigh the credibility of that testimony. *See, e.g.*, *State v. Pickersgill*, 284 So. 3d 542, 549 (Fla. 4th DCA 2019) ("[T]here is no law—constitutional, statutory, or even judge-created—that either precludes law enforcement officers from testifying as to a defendant's confessions without accompanying video or audio recordings of the confessions, or that prohibits the jury from weighing the credibility of that testimony."). And after hearing the challenges to the credibility of the State's witnesses, the jury ultimately found Mr. Oliver guilty.

In summation, while there is no recorded evidence here of the interviews, there is no statutory or common law duty to record these interviews. Therefore, the cases pertaining to the destruction of evidence and failure to preserve evidence have no application. *See, e.g., Sanchez v. State*, 215 So. 3d 69, 69 (Fla. 3d DCA 2016) (declining to address an argument on the State's alleged destruction of a toxicology report where "the record below support[ed] the trial court's conclusion that no such report ever existed"). And even if the failure to create evidence constituted the destruction of evidence, Florida courts do not recognize a per se violation of due process based upon a destruction of or failure to preserve evidence absent the State's bad faith.

Our holding here in no way comments on the propriety of whether interviews with child sexual abuse victims should be recorded either via audio or video. And so, this opinion should be construed neither as a sanction or rebuke of, nor as an advocation for, the policy of PCSO. The facts before us present a case where the victim testified at trial and her

statements made during interviews with the officers and a child protection specialist met the requirement of sufficient safeguards of reliability without the need for any audio or video recording of the interviews. *See Townsend*, 635 So. 2d at 957-58; *Cabrera*, 206 So. 3d at 772; *Rodriguez*, 77 So. 3d at 651. But we recognize that because destruction of evidence and failure to preserve cases turn on their specific facts, the facts in another case may not present with safeguards sufficient to mitigate the need for audio or video recording or may present with evidence of bad faith.

The record before us presents with competent substantial evidence to support the trial court's findings regarding the trustworthiness of the child hearsay statements and the safeguards of reliability in the circumstances surrounding the statements, along with other valid factors described in *Townsend* and its progeny. Accordingly, the trial court did not abuse its discretion in admitting the statements.

Affirmed.

LUCAS and ATKINSON, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

11